William J. MURRAY

v.

Jennifer A. BROMLEY.

No. 2007–162–A.

Supreme Court of Rhode Island.

April 23, 2008.

Dennis S. Baluch, Esq., Providence, for Plaintiff.

Peter A. Clarkin, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., and GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

After a jury returned a verdict awarding him $0 in damages, the plaintiff, William J. Murray, moved for a new trial. The defendant, Jennifer A. Bromley, now appeals from the Superior Court order granting the plaintiff's motion. This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in the appeal should not summarily be decided. After reviewing the record and considering the parties' oral and written submissions, we are satisfied that the appeal may be decided without the necessity of further briefing or argument. For the reasons stated in this opinion, we affirm the order of the Superior Court.

## Facts and Procedural History

This case stems from a rear-end automobile accident in which defendant's vehicle struck the car Mr. Murray was driving on the Route 195 entrance ramp from Friendship Street in Providence on November 5, 1999. Ms. Bromley conceded liability and the case was tried before a jury on the issue of damages only. At trial, Mr. Murray testified that his "neck snapped on the headrest" and then his head went "forward and back again." The plaintiff stated that he immediately felt pain in the back of his neck and his neck felt as if he had been "hit with a baseball bat." Although plaintiff reported his neck pain to police at the scene, plaintiff refused to take the ambulance offered to him to receive medical treatment, and instead returned to work.

Mr. Murray testified that on the next day he noticed a painful lump at the top of his spine. The lump on his spine and the pain caused him to seek the care of a doctor. The plaintiff had an MRI (magnetic resonance imaging) examination, which showed he had suffered a "couple herniated disks" in his back. Several months later, Mr. Murray sought treatment from another doctor because he felt he was not seeing results under the first doctor's care. The second doctor who treated plaintiff injected shots of hydrocortisone directly into plaintiff's neck to relieve his symptoms. Mr. Murray testified that initially this treatment alleviated his symptoms, but over time the treatment's effectiveness diminished. The second doctor also prescribed OxyContin, a potent pain medication, for plaintiff. In addition, Mr. Murray started seeing a chiropractor for the pain in his shoulders and neck. According to plaintiff, the chiropractic treatments did give him some relief on the day the treatments were administered, but the relief was short-lived and the pain returned the next day.

In April 2005, nearly six years after the automobile collision, Mr. Murray underwent surgery to treat his neck and shoulder pain. After the surgery, plaintiff reported a "50, [to] 60 percent" improvement in the pain in his neck and shoulders. He also said the surgery allowed him to take approximately one-third of the amount of pain medication he was taking before the operation. The plaintiff sought employment after his surgery,[1] but he said he had difficulties because of his physical limitations. At the time of trial, plaintiff testified that he was working as a cleaner at a hospital in Providence, but hoped to get another job at the same hospital working with the boilers as a boiler operator.

Mr. Murray's physical limitations did not keep him from enjoying his former recreational activities. The plaintiff testified that he continues to ride his motorcycle, although he no longer rides his motorcycle on "long hauls." The plaintiff also said that he tries to live as normal a life as possible, stating "I can't change my life. I don't have a maid to do my laundry, carry beer into the house or do any of these things. It's me and my wife."

At trial, plaintiff presented Peter Pizzarello, M.D., an orthopaedic surgeon, as an expert witness. Doctor Pizzarello reviewed plaintiff's medical records and physically examined him on June 13, 2006. Doctor Pizzarello testified that, in his opinion, the accident caused plaintiff to require cervical disk surgery, which consisted of removing two disks from plaintiff's back and then fusing his spine—using bone, titanium screws, and titanium plates. He also testified that plaintiff suffered contin-

---

**1.** The plaintiff no longer was employed at the job he held at the time of the accident be- cause of circumstances not related to his injuries.

uous right-shoulder pain as a result of the accident. Doctor Pizzarello concluded that Mr. Murray would be in pain for the rest of his life because of the injuries he suffered in the rear-end collision.

Ms. Bromley presented Edward Feldmann, M.D., a neurologist, as an expert witness. The defendant's expert witness testified that, in his opinion, plaintiff suffered a soft-tissue injury or a muscle strain after the accident. Doctor Feldmann stated that, because plaintiff underwent surgery on his spine several years after the accident and the surgery was on a part of his spine that would not normally be injured by this type of accident, he concluded that plaintiff suffered a soft-tissue injury, and not a spinal injury, as a result of the accident. Doctor Feldmann further opined that the surgery was likely performed for a condition that was not related to the accident.

Ms. Bromley testified on her own behalf, describing the accident as happening when she "took [her] foot off of [her] brake and began to inch forward. While [she] was doing that, [she] briefly looked left to see if there was traffic if [she] could merge and when [she] looked back, Mr. Murray had stopped and that's when [they] had impact." The defendant also stated that she was going under ten miles per hour when their cars collided, and that her airbags did not deploy.

After deliberating on the case, the jury awarded Mr. Murray $0 in damages as a result of the accident. The plaintiff filed a motion for a new trial, arguing that the jury's verdict shocked the conscience. The trial justice agreed with plaintiff, stating that the verdict "demonstrates the jury proceeded from a clearly erroneous basis in assessing the fair amount of compensation due to plaintiff as a result of the subject accident." An order granting plaintiff's motion for a new trial was entered on November 16, 2006, and defendant timely appealed.

## Standard of Review

The role of a trial justice in considering a motion for a new trial is well-established. "When ruling on a motion for a new trial, the trial justice acts as a 'superjuror' and 'should review the evidence and exercise his or her independent judgment "in passing upon the weight of the evidence and the credibility of the witnesses." ' " *Seddon v. Duke*, 884 A.2d 413, 413 (R.I.2005) (mem.) (quoting *Franco v. Latina*, 840 A.2d 1110, 1111 (R.I.2004)). In carrying out the function of "superjuror," the trial justice should adhere to the following principles:

"The trial justice may accept some or all of the evidence. [She] may reject evidence that is impeached or contradicted by other positive testimony or circumstantial evidence. Or [she] may disregard testimony that contains inherent improbabilities or contradictions or which is totally at variance with undisputed physical facts or laws. [She] may also add to the evidence by drawing proper inferences." *Candido v. University of Rhode Island*, 880 A.2d 853, 856 (R.I.2005) (quoting *Marcotte v. Harrison*, 443 A.2d 1225, 1232 (R.I.1982)).

A trial justice may set aside a verdict "when [her] judgment tells [her] that it is wrong because it fails to respond truly to the merits of the controversy and to administer substantial justice and is against the fair preponderance of the evidence." *Candido*, 880 A.2d at 856 (quoting *Barbato v. Epstein*, 97 R.I. 191, 194, 196 A.2d 836, 837 (1964)).

A trial justice may disregard an award of damages and grant a new trial thereon, however, "only if the award shocks the conscience or indicates that the jury was influenced by passion or preju-

dice or if the award demonstrates that the jury proceeded from a clearly erroneous basis in assessing the fair amount of compensation to which a party is entitled." *English v. Green*, 787 A.2d 1146, 1150 (R.I. 2001) (quoting *Dilone v. Anchor Glass Container Corp.*, 755 A.2d 818, 820–21 (R.I.2000)).

On appeal, this Court "will affirm a trial justice's decision on a motion for a new trial as long as the trial justice conducts the appropriate analysis, does not overlook or misconceive material evidence, and is not otherwise clearly wrong." *Morrocco v. Piccardi*, 674 A.2d 380, 382 (R.I. 1996). "[W]hen we review a trial justice's ruling on a motion for a new trial, we afford it 'great weight.'" *Bajakian v. Erinakes*, 880 A.2d 843, 851–52 (R.I.2005) (quoting *Sarkisian v. NewPaper, Inc.*, 512 A.2d 831, 835 (R.I.1986)).

## Discussion

We have reviewed carefully the trial justice's decision on the motion for a new trial, and we conclude that she adhered to the appropriate standards and properly articulated the basis for her findings that the jury's verdict cannot stand based upon the testimony and evidence at trial. Therefore, we will affirm the trial justice's decision unless we find that she misconceived material evidence or otherwise clearly was wrong. *See Candido*, 880 A.2d at 857.

The trial justice gave a thorough discussion of the evidence and witness testimony when ruling on the motion. She began her analysis by stating that the jury award "shock[s] the [conscience] of this Court and clearly demonstrates the jury proceeded from a clearly erroneous basis in assessing the fair amount of compensation due to plaintiff as a result of the subject accident." To support her conclusion, she offered that "[e]ven the defendant's own

expert witness * * * opined that plaintiff suffered an injury albeit a soft tissue injury." The trial justice rejected the opinion of Dr. Feldmann because she "felt he was not a credible witness in this case," stating that he "came across as a hired gun willing to say anything favorable to the defendant's position."

The trial justice found that Dr. Pizzarello was "far more credible," and she noted that he was critical of the treatment plaintiff initially received and, particularly, the dosage of pain medication plaintiff was given. The trial justice also found Mr. Murray to be a credible witness who was "pleasant and appeared sincere." She also thought the jury should have been impressed by his efforts to remain employed in spite of his pain. Significantly, the trial justice found defendant's testimony minimizing the impact during the accident to be "self-serving," and she found that the testimony "did not provide a credible, reliable basis for the jury to conclude that plaintiff's injuries were not caused by the accident." The trial justice also referred to photographs of plaintiff's automobile introduced into evidence depicting significant damage, including the apparent dislodgement of the driver's seat from the automobile frame.

In conclusion the trial justice stated that "[w]hen the foreperson stood up and answered the question [about the amount of damages] zero, the only persons in the room who could not have been knocked over by a feather and whose jaws were not dropped were the jurors themselves." She found, therefore, that "[t]he jury totally disregarded the evidence, misconstrued it, ignored my instructions on law. The verdict was clearly as a result of prejudice * * * toward the plaintiff and sympathy toward the defendant."

After having carefully reviewed the record, we conclude that the trial justice did not misconceive or overlook material evidence and she was not otherwise clearly wrong. Accordingly, we discern no basis upon which to subvert her ruling.

## Conclusion

For the reasons stated in this opinion, we affirm the order of the Superior Court granting Mr. Murray a new trial. The record may be returned to the Superior Court for proceedings consistent with this opinion.