Frederick W. **BONN**

v.

Amanda **PEPIN** et al.

No. 2009–71–Appeal.

Supreme Court of Rhode Island.

Jan. 7, 2011.

Timothy J. Robenhymer, Esq., Warwick, for Plaintiff.

Joseph E. Rothemich, Jr., Esq., Coventry, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice FLAHERTY, for the Court.

On October 22, 2003, Frederick W. Bonn was traveling on Cowesett Avenue in West Warwick with his children. At that same time, Amanda Pepin was operating her vehicle and attempting to merge onto Cowesett Avenue. A collision between the two vehicles ensued, and Ms. Pepin ultimately was determined to be liable for causing the accident. Mr. Bonn claimed significant injuries arising from the mishap, and he eventually filed suit for money damages. After trial, a Superior Court jury awarded him $70,848 for his injuries.[1] Dissatisfied with the verdict against her, Ms. Pepin moved for a new trial on damages pursuant to Rule 59 of the Superior Court Rules

---

1. A judgment on the verdict entered by the trial court added prejudgment interest to the jury award in the amount of $37,549.44.

of Civil Procedure, or in the alternative, for a remittitur. That motion was denied by the trial justice. After a timely appeal, this Court ordered the parties to appear to show cause why the issues raised by this appeal should not summarily be decided. The parties so appeared on December 7, 2010. For the reasons set forth below, we affirm the judgment of the Superior Court.

## Standard of Review

The duty of a trial justice on a motion for a new trial is well established. "As this Court has often stated, '[w]hen ruling on a motion for a new trial [in a civil case tried to a jury], the trial justice acts as a superjuror and should review the evidence and exercise his or her independent judgment in passing upon the weight of the evidence and the credibility of the witnesses.'" *Connor v. Schlemmer*, 996 A.2d 98, 114 (R.I.2010) (quoting *Seddon v. Duke*, 884 A.2d 413, 413 (R.I.2005) (mem.)). "The trial justice undertakes his or her 'independent appraisal of the evidence in the light of his [or her] charge to the jury.'" *Id.* at 114–15 (quoting *Kurczy v. St. Joseph Veterans Association, Inc.*, 713 A.2d 766, 770 (R.I.1998)). "[T]he trial justice need not engage in an exhaustive review and analysis of all of the evidence and testimony presented at trial * * * [but] need only *make reference to such facts* disclosed by the testimony *as have motivated his or her conclusion.*" *Bourdon's, Inc. v. Ecin Industries, Inc.*, 704 A.2d 747, 758 (R.I.1997) (quoting *Kwarciak v. Star Market*, 506 A.2d 545, 547 (R.I. 1986)).

"Although the fixing of damages is normally a function of the jury, it may be rejected by a trial justice on a motion for a new trial." *Reccko v. Criss Cadillac Co.*, 610 A.2d 542, 545–46 (R.I.1992). "A trial justice may set aside a verdict 'when [her] judgment tells [her] that it is wrong because it fails to respond truly to the merits of the controversy and to administer substantial justice and is against the fair preponderance of the evidence.'" *Murray v. Bromley*, 945 A.2d 330, 333 (R.I.2008) (quoting *Candido v. University of Rhode Island*, 880 A.2d 853, 856 (R.I. 2005)).

"In the alternative, a remittitur may be accomplished if the trial justice concludes, after passing upon the evidence, that the plaintiff is not entitled to such an award or that the award is unreasonable in light of the evidence presented at trial." *Reccko*, 610 A.2d at 546. "The trial justice may reject the award or order a remittitur of the award if it shocks the conscience or it 'clearly appears to be excessive, or to represent the passion and prejudice of the jury rather than their unbiased judgment.'" *Id.* at 546 (quoting *Zarrella v. Robinson*, 460 A.2d 415, 418–19 (R.I. 1983)).

"On appeal, this Court 'will affirm a trial justice's decision on a motion for a new trial as long as the trial justice conducts the appropriate analysis, does not overlook or misconceive material evidence, and is not otherwise clearly wrong.'" *Murray*, 945 A.2d at 334 (quoting *Morrocco v. Piccardi*, 674 A.2d 380, 382 (R.I.1996)). Upon review, we accord great weight to a trial justice's ruling on a motion for a new trial. *Connor*, 996 A.2d at 115.

## Analysis

There can be no question that the tasks of the parties, their counsel, the jury, and the trial justice were made exponentially more complicated in this case because plaintiff had been involved in three additional accidents between the 2003 collision at issue here and the left shoulder surgery

that he underwent in 2007.[2]

It is incontrovertible that there was starkly contradictory medical testimony presented during the course of the trial. This included the videotaped deposition of Dr. Eugene A. Russo, who treated plaintiff after the 2003 collision; the videotaped deposition of Dr. Winslow Alford, an orthopedic surgeon who operated on plaintiff's left shoulder injury in 2007; and defendant's expert medical witness, Dr. A. Louis Mariorenzi. Because the issue of liability was largely conceded by defendant, the issue of proximate cause concerning the extent of Mr. Bonn's injuries—as demonstrated or refuted by the conflicting testimony of the medical experts—burgeoned into the central issue contested at trial.

When he ruled on defendant's motion for a new trial, the trial justice expressed the task before him saying, "[t]he real question in this case is, and has always been, proximate cause. Mr. Bonn has clearly established a strong negligence case and real damages. The Court's function, therefore, is to scour the record to determine whether the jury had a sufficient basis for proximate cause." Clearly cognizant of the complexities resulting from the three additional accidents, the trial justice articulated the pivotal issue, saying, "[p]erhaps the most significant question in this case was how much of his treatment, spanning at least five years, was proximately caused by the motor vehicle collision."

2. Respectively, the three additional accidents occurred in September 2004 (Bonn rear-ended), October 2004 (Bonn thrown from his motorcycle in a collision with a motor vehicle), and August 2006 (Bonn broad-sided while driving a dump truck).

3. This period of treatment was before any of the three additional accidents that occurred after the 2003 collision, but before the September 2007 left-shoulder surgery.

## A

### Testimony of the Medical Experts

Predictably, the testimony of the medical experts painted conflicting portraits. Doctor Russo, a neurosurgeon who treated Mr. Bonn from October 29, 2003, to August 11, 2004,[3] testified that Mr. Bonn came to him after "an injury of the left forearm, left hand, [and] upper-left shoulder" sustained as a result of his involvement "in a motor vehicle accident on 10/22/03." Mr. Bonn reported to Dr. Russo that pain resulting from this injury was radiating into his spine, neck, head, and both shoulders. Doctor Russo treated plaintiff by prescribing medications, arranging a course of physical therapy, anti-inflammatory injections, ordering two diagnostic MRIs[4] that revealed two disc abnormalities, and referrals for cervical traction and chiropractic care. Doctor Russo testified that Mr. Bonn was discharged from his care on August 11, 2004. That discharge, Dr. Russo testified, was based upon his opinion that Mr. Bonn, despite continuing pain and limitation "had reached his maximum medical improvement."[5] Doctor Russo further testified to his opinion, based on a reasonable degree of medical certainty, that there was a direct causal relationship between the October 2003 motor vehicle accident and the patient's clinical condition.

The plaintiff next presented the video deposition of Dr. J. Winslow Alford, a

4. Magnetic Resonance Imagining (MRI) is a noninvasive diagnostic procedure commonly utilized in the medical field to obtain detailed sectional images of the internal structure of the body.

5. Further, Dr. Russo testified that Bonn had reached a clinical plateau; he explained, "a clinical plateau is when someone has improved, but remains symptomatic. They continue to have symptoms." "Symptoms" Dr. Russo said, "is pain."

board certified orthopedic surgeon subspecializing in shoulder and knee injuries.[6] Doctor Alford testified that he first saw Mr. Bonn on June 26, 2007, for treatment. At that time, Mr. Bonn told the physician that he had been experiencing shoulder and neck pain dating to 2003. Doctor Alford also reviewed two MRIs dating to 2004, when Mr. Bonn still was being treated by Dr. Russo. These were "[a]n MRI of the cervical spine and an MRI of the left shoulder without contrast." When he reviewed the results of the MRIs, Dr. Alford detected evidence of a symptomatic superior labral tear. He testified that such an injury to the shoulder does not always produce constant pain, but can cause pain when the injured person is in "provocative positions." He testified "that because of the pain [Mr. Bonn] had held himself in a fairly protected position, and so he had lost—he had lost motion." Therefore, with the goal of increasing range of motion and augmenting rotor cuff strength relative to Mr. Bonn's left shoulder, Dr. Alford prescribed physical therapy. Also, because he found Mr. Bonn to be "very symptomatic" and having "very poor function" of the left shoulder, he placed a restriction upon Mr. Bonn to keep him out of work. Subsequently, because Mr. Bonn's symptoms remained "fairly consistent" despite conservative treatment, Dr. Alford concluded that arthroscopic surgery was necessary. That surgery was performed on Mr. Bonn's left shoulder in September of 2007. At deposition, the doctor was asked:

"Based on your education, your training, and the treatment that you provided to Mr. Bonn, all the medical records that you reviewed, including the results of the MRI that you referenced and the arthroscopic surgery, do you have an opinion to a reasonable degree of medical certainty as to whether or not the superior labral tear was caused by the motor vehicle accident of October 22, 2003, in his left shoulder?"

To this question, Dr. Alford replied, "Yes. * * * It's my opinion that that was caused by the motor vehicle accident in 2003."

Not surprisingly, defendant presented conflicting expert testimony in the person of Dr. A. Louis Mariorenzi, an orthopedic surgeon, who testified that he did not physically examine Mr. Bonn and that his opinions were based upon his review of medical records, court documents, and exhibits. With respect to the injuries Mr. Bonn suffered as a result of the 2003 collision, Dr. Mariorenzi testified, "[i]t was my opinion based upon the medical records that I reviewed that as a result of the motor vehicle accident he suffered a strain to the neck, the lower back and a strain to the left shoulder." Asked for his opinion about the duration of Mr. Bonn's injuries resulting from the motor vehicle accident of October 2003, Dr. Mariorenzi answered, "[i]t was also my opinion that from these injuries he had made a full recovery, based on the records reviewed, probably by August of 2004." Critically, Dr. Mariorenzi opined, "the surgery that was performed on his shoulder was not a result or consequence of the injury he suffered on October 22, 2003." [7]

6. At oral argument, defendant pressed the position that the trial justice committed reversible error by allowing the expert witness testimony of Dr. Alford to be presented to the jury. To the extent that it was developed in appellant's Sup.Ct. R. 12A statement, we find this argument to be unpersuasive.

7. When he was cross-examined, Dr. Mariorenzi conceded that he did not look at the 2004 MRI films of Mr. Bonn's neck or left shoulder. He further testified that he generates between one hundred and one hundred and eighty thousand dollars of income per year from defense attorneys for providing expert medical opinions.

## B

## Sufficient Record Evidence on Causation

■ We hold that the trial justice did not overlook or misconceive material evidence, and that he was not clearly wrong when he denied the motion for a new trial on damages. Moreover, our review of the record leads us to the firm conclusion that he engaged in the proper analysis when he independently passed upon the weight of the evidence and the credibility of the witnesses.

For example, with respect to Dr. Alford, the trial justice summarized: "Credible, consistent and well prepared on direct examination, his credibility was shaken, in the mind of the Court on cross." Of Dr. Russo, the justice said, "[k]nowledgeable and well-spoken on direct, Dr. Russo became much more guarded on cross, clearly disliking any questioning of his conclusions. * * * The Court questioned his conclusions on causation, but he made a clear case for conclusion if the jury found him credible." And of Dr. Mariorenzi, the trial justice averred, "[c]ross-examination of Dr. Mariorenzi was strong where it became clear he never saw Mr. Bonn, did not have all of the reports, and is paid significantly by defense attorneys. There was sufficient reason to question Dr. Mariorenzi's conclusions."

Additionally, we note with favor that the trial justice set forth sufficient details of his review of the record when passing upon the evidence. To wit, the trial justice said:

"Mr. Bonn was clearly injured in the collision. * * * His medical bills were significant * * *. He lost work for months at a time. His lost wages and medical bills could easily total $50,000. He was in pain and it was documented for a significant time. The physical therapy records and the treatment records preventing him from work are clearly indicative. So the dollar amount of the verdict is not really in question, if it is tied to the cause.

" * * * The Court gave a lengthy instruction on causation and also answered a question specifically focused on whether the jury could divide damages and find that only some of the injury was causally related. I suspect that that [sic] this is what they did, given the strong negligence case and the significant damages demonstrated. If the jury found complete causation for every injury and pain felt, the damages could have been much higher."

After performing his role as a superjuror, and satisfactorily documenting the record evidence supporting his independent judgment, the trial justice ruled:

"So returning to the ground for the motion, again there is a significant basis, without going through all of the grounds, the Court does find that the jury had sufficient basis to find both liability, causation, proximate cause and the amount of damages. The Court therefore denies the defendant's motion for a new trial and on the same ground denies the motion for remittitur * * *."

Based upon the foregoing, we hold that the trial justice properly heard, weighed, and passed upon the defendant's Rule 59 new trial motion. In addition, because our standard of review guides us to accord great weight to a trial justice's ruling on a motion for a new trial, we hold that he neither erred nor was clearly wrong. Indeed, we agree with his analysis.

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior

Court.   The record may be returned to the Superior Court.