**Supreme Court**

No. 2012-2-Appeal.
(PC 05-2924)

Eloisa Gomes and Armando Gomes          :

v.                                       :

Mario Rosario.                           :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Eloisa Gomes and Armando Gomes      :

v.      :

Mario Rosario.      :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  This appeal arises out of a seven-day jury trial resulting from an automobile collision that occurred more than ten years ago.  The jury found that the plaintiff, Eloisa Gomes (plaintiff or Gomes), failed to prove, by a preponderance of the evidence, that the defendant, Mario Rosario (defendant or Rosario), was negligent.[1]  The trial justice, however, granted the plaintiff's motion for a new trial, finding that the jury's assignment of "no liability to the defendant demonstrates that this court's instructions were not clear or properly understood or applied by the jury in this case."[2]  The defendant contends on appeal that the trial justice erred in granting a new trial.  For the reasons that follow, we affirm the judgment.

**Facts and Travel**

During the afternoon of September 23, 2003, Gomes, a certified nursing assistant, was driving from the home of one patient to the home of another; she was traveling south to north on

---

[1] Although Armando Gomes still appears in the case caption, prior to trial, the parties entered a stipulation dismissing "his claims for loss of consortium damages" and indicating that he would "no longer continue as a plaintiff in the above captioned matter."

[2] The trial justice also denied plaintiff's motion for additur because the jury found in favor of defendant and therefore awarded no damages to which an additur could attach.

Pine Street in Pawtucket. At the same time, Rosario was driving home from a bank, traveling west to east on Marrin Street. It is undisputed that the vehicles operated by Gomes and Rosario collided in the intersection—governed by a traffic light—bisecting Pine Street and Marrin Street.[3] The circumstances that led to that collision comprised the bulk of the relevant testimony at trial.[4]

Two independent eyewitnesses testified at trial: Isabel Baldera (Baldera) and Robert Smith (Smith).[5] Baldera testified that she was on her way to work on the day of the accident and that she was stopped behind another vehicle in the right lane on Marrin Street. While waiting at the red light, Baldera noticed a red truck in her mirror. She testified that the truck, driven by Rosario, passed her on the left and proceeded through a red light into the intersection. Meanwhile, she testified that Gomes was proceeding down Pine Street, with a green light, and that she slowly entered the intersection. Baldera testified that the vehicles collided in the intersection and "[t]he front of [Rosario's] truck hit the front left side of [Gomes's vehicle]." Baldera admitted, however, that she did not see that Gomes had a green light directly, but rather assumed so because she (Baldera) had a red light.

Smith, the second eyewitness, testified that he was driving on Marrin Street on his way home from work as a taxi driver on the day of the accident. His testimony was in agreement with previous witnesses that Marrin Street was a one-way roadway and three lanes wide, and he stated that he was the first vehicle stopped at a red light in the middle lane. Smith testified that,

---

[3] Pine Street and Marrin Street are one-way streets and are perpendicular to each other.

[4] There was also a significant amount of testimony on damages at trial. This Court, however, only recounts the testimony relevant to the jury's finding and the trial justice's decision on the motion for a new trial.

[5] Because Baldera was not available to testify at trial, her testimony was video-recorded and played for the jury.

while stopped at the red light, he saw Rosario's truck pass him on the right and drive through the red light. As this was happening, Smith observed Gomes's small, blue car traveling down Pine Street. He testified that both cars were traveling at around twenty miles per hour. Smith testified that when the cars collided, Rosario's truck hit Gomes's "right broadside." Then the following colloquy ensued:

"Q. What part of his [Rosario's] car hit her [Gomes's] car?

"A. His front right.

"Q. That would be the front passenger side?

"A. No, the other side.

"Q. And what part of her car was hit?

"A. The front part of her -- the front part of her car."

Smith testified that, after the initial collision, Rosario's truck hit a fence and Gomes's car remained in the middle of the road.

Pawtucket Police Officer Hermano Pereira (Officer Pereira) investigated the accident. Although he testified that he did not recollect the incident at the time of trial, he testified about the contents of a police report that he prepared on the day of the accident. The police report, admitted as a full trial exhibit, contained a diagram of the damaged areas of the vehicles. Officer Pereira testified that the diagram showed damage to the front, front right, front left, and the left and right sides near the doors of Rosario's vehicle. The diagram also depicted damage to the front, front right, and front left of Gomes's vehicle. Based on his conversations with Baldera, Smith, Gomes, and Rosario, Officer Pereira issued a citation to Rosario for failure to obey a traffic control device. Pawtucket Municipal Court records indicate that the ticket was paid and not contested by Rosario.

Gomes testified that she was working as a certified nursing assistant and traveling between patients on September 23, 2003. She testified that she was driving in the left lane of Pine Street at about twenty miles per hour. Gomes testified that she had a green light and entered the intersection, but at about the middle of the intersection she "heard the impact with [Rosario's] car." She testified that her car spun around, made a second impact on the left side, and finally hit a sidewalk. According to Gomes, a photograph depicting the damage to her driver's side rear door was the result of the second impact. On cross-examination, Gomes stated that the initial impact involved the front of her car, but she could not remember what part of Rosario's truck was hit or which vehicle struck the other vehicle.

Rosario testified that he was traveling west to east on Pine Street and proceeding at ten to fifteen miles per hour. He contended that the traffic light was green "constantly" and that, as he approached the intersection, he saw Gomes's car approaching at a high rate of speed from fifty feet away. Despite acknowledging that he saw Gomes's car entering the intersection and his testimony that he was traveling only at ten to fifteen miles per hour, when asked why he did not brake to avoid the accident, Rosario responded, "I panic right there." Rosario testified that the front of Gomes's car contacted the front of his truck near the door. According to Rosario, after the collision, his truck's passenger-side front wheel and door were damaged as a result of the accident. Rosario testified that, after the collision, his truck traveled onto a grassy area and hit a fence. He testified that he had the truck repaired and never took any pictures of the damage. Finally, he testified that he did not contest the traffic citation because he wanted to "get over with it" and that he "didn't want any problem."

The jury found that Gomes had not proven, by a fair preponderance of the evidence, that Rosario was negligent. The plaintiff filed a motion for a new trial, arguing that the verdict failed

- 4 -

to respond to the evidence, and, in a bench decision, the trial justice granted the motion and ordered a new trial. The trial justice found both of the independent, neutral witnesses, Baldera and Smith, to be "highly credible." Regarding the testimony of the parties, he noted that both Gomes and Rosario had an interest in the outcome of the trial and pointed to inconsistencies and a lack of clarity in their testimony. The trial justice acknowledged the dispute over the initial point of impact between the vehicles and the lane of travel of each party, but found "the issue of who struck whom and the lane of travel [were] not material to the inquiry of whether there was any liability." The trial justice accorded "some weight" to the guilty disposition of the citation issued to defendant. Ultimately, the trial justice concluded that, based on the testimony of the independent fact witnesses and the guilty disposition of the citation, he was satisfied "that this court's instructions were not clear or properly understood or applied by the jury in this case."

### Standard of Review

"A trial justice's role in considering a motion for a new trial is that of a superjuror, who must weigh the evidence and assess the credibility of the witnesses." McGarry v. Pielech, 47 A.3d 271, 280 (R.I. 2012) (quoting Pollard v. Hastings, 862 A.2d 770, 777 (R.I. 2004)).

> "[T]he trial justice must consider, in the exercise of his [or her] independent judgment, all the material evidence in the case, in the light of his [or her] charge to the jury and pass on its weight and the credibility of the witnesses, determine what evidence is believable, and, decide whether the verdict rendered by the jury responds to the evidence presented and does justice between the parties." Id. (quoting Morgera v. Hanover Insurance Co., 655 A.2d 698, 698 (R.I. 1995) (mem.)).

"If the trial justice is persuaded that 'the verdict is wrong because it fails to respond truly to the merits and to administer substantial justice between the parties or is against the fair preponderance of the evidence, he [or she] should set aside the verdict and order a new trial.'" Id. (quoting Morgera, 655 A.2d at 698). "If the trial justice has carried out the duties required by

Rule 59 of the Superior Court Rules of Civil Procedure and our decided cases, his or her decision is accorded great weight by this Court and will not be disturbed unless the plaintiff 'can show that the trial justice overlooked or misconceived material and relevant evidence or was otherwise clearly wrong.'" Id. (quoting Botelho v. Caster's, Inc., 970 A.2d 541, 546 (R.I. 2009)).

**Analysis**

In his bench decision, the trial justice weighed the evidence and assessed the credibility of the witnesses. Specifically, he noted that Baldera testified that "[s]he observed the defendant driving his car at a high rate of speed, go through the red light, and strike the plaintiff's automobile."[6] The trial justice determined that all of Baldera's testimony "was highly credible and that there was no evidence that showed any bias or prejudice to either party." Similarly, the trial justice noted that Smith testified that defendant ran a red light and concluded that his testimony was highly credible and without bias or prejudice toward either party. Although when discussing the testimony of the parties, the trial justice did not specifically state whether or not he found them credible, he did note that each had an interest in the case. In addition to recounting their testimony—each contending that he or she had a green light—the trial justice pointed to some inconsistencies in Gomes's testimony and a lack of detail in Rosario's testimony. Finally, the trial justice recounted Officer Pereira's testimony and the traffic citation to Rosario for failure to obey a traffic control device—a charge that defendant did not contest.

The defendant argues that the trial justice did not properly weigh the evidence in light of his charge to the jury and misconceived and overlooked material evidence and was clearly wrong in granting plaintiff's motion for a new trial. We disagree. In the trial justice's analysis, the key

---

[6] Saying that Baldera testified that defendant was traveling at a "high rate of speed" may be an overstatement. Baldera's testimony was that defendant was driving "[n]ot really that fast but I mean quick fast to the red light." Nevertheless, the speed of defendant's vehicle was not crucial to the trial justice's decision.

material evidence was that two independent witnesses, as well as plaintiff, each testified that it was defendant who ran the red light. Specifically, the trial justice found that "the two disinterested fact witnesses were * * * in the best position to observe the circumstances that occurred just prior to the time of the accident." We note that the only evidence that supports defendant's contention that his light was green was his own testimony. That averment is not only self-serving, it is also belied by the fact that Rosario did not challenge the traffic citation, a fact to which the trial justice accorded "some weight." The overwhelming evidence—testimony by two independent witnesses that Rosario ran a red light—as well as his failure to stop despite his admission that he saw plaintiff's vehicle ahead of time, does not comport with the jury's finding that defendant was not negligent in light of the negligence instruction.[7] Thus, the trial justice had a sufficient basis to find that the jury's verdict did not respond to the evidence.

We are of the opinion that the trial justice did not overlook or misconceive material facts. As discussed herein, the trial justice found the most significant evidence to be the testimony of Baldera and Smith. He did not overlook contrary facts—he actually raised some of the inconsistencies, such as the lane of travel and who hit whom, and found them to be "not material to the inquiry of whether there was any liability."[8] Because the trial justice is closer to the

---

[7] The trial justice instructed the jury that negligence is defined, generally, as "the failure of one person acting in a given set of circumstances to exercise that degree of care for the safety of another person that a reasonably prudent person would ordinarily exercise in the same or similar conditions." The trial justice also instructed the jury that they could consider a violation of traffic and motor vehicle laws as evidence of negligence. Among the specific traffic laws described, the trial justice instructed the jury that "not only must [a driver] observe traffic control signals and devices and the laws of the road, but also must look for other traffic and take into consideration the circumstances[,] such as * * * the distance and speed of other vehicles that may be approaching the same intersection"; furthermore, "the driver shall obey the instructions of any official traffic control device applicable to him or her."

[8] Although the trial justice used the term "liability," which connotes legal responsibility under the four-element tort of negligence, the only question that the jury answered was whether defendant was "negligent," i.e., whether he breached his duty of care (one element of the tort of

evidence, we defer to the trial justice's determinations on these points, particularly given the fact that the evidence was centered on eyewitness testimony. See Bonn v. Pepin, 11 A.3d 76, 78 (R.I. 2011) ("Upon review, we accord great weight to a trial justice's ruling on a motion for a new trial."); cf. Harvard Pilgrim Health Care of New England, Inc. v. Gelati, 865 A.2d 1028, 1034 (R.I. 2004) (noting that a trial court is in a better position to weigh evidence and pass upon credibility than is this Court). This Court, reading an inanimate transcript, is not well positioned to weigh evidence or determine credibility. Finally, to the extent that the defendant argues that the trial justice did not delve deep enough into the inconsistencies of the statements, "the trial justice need not engage in an exhaustive review and analysis of all of the evidence and testimony presented at trial * * * [but] need only make reference to such facts disclosed by the testimony as have motivated his or her conclusion." Bonn, 11 A.3d at 78 (quoting Bourdon's, Inc. v. Ecin Industries, Inc., 704 A.2d 747, 758 (R.I. 1997)).

## Conclusion

For the reasons stated, we affirm the order granting the plaintiff's motion for a new trial. The papers shall be returned to the Superior Court.

---

negligence). Because "liability" would necessarily require "negligence" (breach of duty), this imprecision in language is not significant for our purposes; however, we caution against the loose use of legal terminology.



**TITLE OF CASE:**    Eloisa Gomes and Armando Gomes v. Mario Rosario.

**CASE NO:**    No. 2012-2-Appeal.
(PC 05-2924)

**COURT:**    Supreme Court

**DATE OPINION FILED:**    November 27, 2013

**JUSTICES:**    Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**    Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Brian P. Stern

**ATTORNEYS ON APPEAL:**

For Plaintiff:  Raymond A. Pacia, Esq.

For Defendant:  Peter A. Clarkin, Esq.