**Supreme Court**

No. 2013-90-Appeal.

(PC 08-5961)

Kevin R. Hough                          :

v.                               :

Shawn P. McKiernan et al.               :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Kevin R. Hough                    :

v.                                :

Shawn P. McKiernan et al.         :


Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Indeglia, for the Court.**  The defendant, Shawn P. McKiernan (McKiernan or defendant), appeals from a Superior Court ruling granting his motion for a remittitur and awarding the plaintiff, Kevin R. Hough (Hough or plaintiff), damages of $925,000.  The defendant contends that this award was excessive and punitive in nature.  This case came before the Supreme Court on September 30, 2014, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After hearing the arguments of counsel and reviewing the memoranda submitted on behalf of the parties, we are satisfied that cause has not been shown.  Accordingly, we shall decide the appeal at this time without further briefing or argument.  For the reasons set forth herein, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

This case arises from McKiernan's assault on plaintiff on February 23, 2006. The plaintiff filed suit against defendant for negligence, assault, and battery on September 16, 2008.[1] At trial, defendant did not contest liability, and plaintiff presented evidence that he suffered a significant and traumatic brain injury as a result of the assault.

The case was tried to verdict in front of a jury between November 28, 2012 and December 2, 2012. At trial, Hough testified that he was walking home from his job at Walgreens in Warwick with a friend, when a vehicle drove up behind them and flashed its high beams. Hough testified that the occupants of the vehicle, which he would soon learn included McKiernan, yelled obscenities at them as they drove by. Hough further testified that the vehicle drove by them a second and third time. On the third occasion, Hough testified that the vehicle stopped a few car lengths in front of them, at which point three people jumped out. Hough testified that McKiernan exited from the driver's seat, approached him, asked if he wanted to fight, and proceeded to "take a swing" at him, only to miss when Hough ducked out of the way. Hough testified that McKiernan then punched him in the chest, which caused him to fall to the

---

[1] Before trial, plaintiff amended his complaint to add an allegation of negligence against Phillip and Darlene Burke, and an allegation of negligence against Diane Archer, as owner of the vehicle defendant was driving in the moments leading up to the assault. Summary judgment was entered in favor of Phillip and Darlene Burke on November 26, 2012. The plaintiff amended his complaint on another occasion to add Rita Bower and an unknown person based upon ownership of the vehicle. All claims against Diane Archer were dismissed by mutual agreement after Quincy Mutual Fire Insurance Company (Quincy) admitted that the vehicle was owned by Bower. When Bower passed away, Quincy was substituted as a party defendant. When plaintiff's testimony concluded, Quincy moved for judgment as a matter of law pursuant to Rule 50(a) of the Superior Court Rules of Civil Procedure. Judgment was granted in Quincy's favor and entered on November 30, 2012. The plaintiff filed a timely notice of appeal from that judgment on December 18, 2012, and that matter was heard in full argument by this Court the same day as this appeal.

pavement. He indicated that he had no memory from the time of the punch until he woke up in the hospital some weeks later.

In a video deposition presented to the jury, Dr. Maria Guglielmo, plaintiff's neurosurgeon, testified that plaintiff was in "immediate danger of death" when he arrived at the hospital and that he had an "extremely swollen, damaged brain." Doctor Guglielmo further testified that she had to remove a large piece of plaintiff's skull so that the damaged brain could "expand out of the confines of the skull." The swelling was testified to have been so severe that the piece of skull that she had removed could not be put back in place, and had to be kept in plaintiff's abdomen for three months to keep it from becoming necrotic while the swelling dissipated.

For almost two weeks following the first surgery, plaintiff remained in a coma or a near-coma like state. The plaintiff was then transferred to a rehabilitation center on March 7, 2006, where he remained until March 16, 2006. The plaintiff detailed his rehabilitation, which included relearning how to walk and talk. The plaintiff recalled the pain that simple acts of dressing and tying his shoes caused as a result of the skull flap embedded in his abdomen. He also described his difficulties with schoolwork after the assault.

The plaintiff then divulged the pain and suffering that he went through in the months following the accident. He testified that he felt humiliated when he had to shower naked in front of nurses, and that he had to wear a hockey-like helmet every day to protect his exposed brain. He recounted that his only attempt to leave the house during his recuperation was to see a movie with a friend. The experience ended traumatically, however, as he was mocked over his helmet by teenagers, which compelled him to leave the theater.

Doctor Guglielmo testified that, on May 30, 2006, she performed the surgery to replace the removed portion of the skull. The procedure required the doctor to open plaintiff's abdomen, remove the portion of the skull embedded inside, reopen the incision on his scalp, and reattach the piece of his skull to his head. The plaintiff testified that he was awake for part of the procedure and that the removal of a drain from his skull created a "sick, slithering feeling" as if a "snake was being tugged out of [his] head." Doctor Guglielmo testified that plaintiff was doing well on July 6, 2006, but that he sought treatment for headaches in both September 2007 and April 2012. She informed the jury of her opinion that the cause of plaintiff's headaches was the severe head trauma he suffered in the 2006 assault.

The remainder of plaintiff's testimony centered on his loss of enjoyment of life. Although he acknowledged that he graduated on time, with the assistance of tutors, he was unable to attend his graduation ceremony in order to have the staples removed from his head. The plaintiff also testified that he stopped playing pickup sports, a regular activity of his, after the incident. He added that, some years later, he enrolled at Rhode Island College, but he testified that he left during his second semester due to the embarrassment he felt over the constant injury-related questioning. The plaintiff testified that he is horrified by the permanent scars that appear on his head.

In her closing argument, plaintiff's counsel provided the jury with a demonstrative aid, or "guideline of sorts," that might help "put a value on what [plaintiff] has been through." The trial justice then instructed the jury to answer the interrogatory: "What, if any[,] damages[] did plaintiff suffer and prove by a fair preponderance of the evidence as a result of the defendant's, Shawn McKiernan's, assault * * *." After deliberation, the jury returned a verdict awarding plaintiff $1.75 million in damages plus interest.

Contending that the verdict shocked the conscience and was against a fair preponderance of the evidence, defendant filed a "motion for remititir [sic] and/or new trial" on December 12, 2012. On December 28, 2012, the trial justice granted defendant's motion, ordering a new trial unless plaintiff agreed to a remittitur of the damages awarded from $1.75 million to $925,000 plus interest. The plaintiff accepted the remittitur in lieu of a new trial, and a judgment was entered to that effect.[2] The defendant filed a timely notice of appeal from that judgment on January 3, 2013.

## II

### Standard of Review

As we have often stated, "[w]hen ruling on a motion for a new trial [in a civil case tried to a jury], the trial justice acts as a 'superjuror' and 'should review the evidence and exercise his or her independent judgment in passing upon the weight of the evidence and the credibility of the witnesses.'" Connor v. Schlemmer, 996 A.2d 98, 114 (R.I. 2010) (quoting Seddon v. Duke, 884 A.2d 413, 413 (R.I. 2005) (mem.)). "The trial justice undertakes his or her 'independent appraisal of the evidence in the light of his [or her] charge to the jury.'" Id. at 114-15 (quoting Kurczy v. St. Joseph Veterans Association, Inc., 713 A.2d 766, 770 (R.I. 1998)). "[T]he trial justice need not engage in an exhaustive review and analysis of the evidence and testimony presented at trial * * * [but] need only make reference to such facts disclosed by the testimony as have motivated his or her conclusion." Bourdon's, Inc. v. Ecin Industries, Inc., 704 A.2d 747, 758 (R.I. 1997) (quoting Kwarciak v. Star Market, 506 A.2d 545, 547 (R.I. 1986)).

"Although the fixing of damages is normally a function of the jury, it may be rejected by a trial justice on a motion for a new trial." Reccko v. Criss Cadillac Co., 610 A.2d 542, 545-46

---

[2] The judgment awarded plaintiff $925,000 with interest of $760,273.97, for a total of $1,685,275.97.

(R.I. 1992). "A trial justice may set aside a verdict 'when [her] judgment tells [her] that it is wrong because it fails to respond truly to the merits of the controversy and to administer substantial justice and is against the fair preponderance of the evidence.'" Murray v. Bromley, 945 A.2d 330, 333 (R.I. 2008) (quoting Candido v. University of Rhode Island, 880 A.2d 853, 856 (R.I. 2005)).

"In the alternative, a remittitur may be accomplished if the trial justice concludes, after passing upon the evidence, that the plaintiff is not entitled to such an award or that the award is unreasonable in light of the evidence presented at trial." Reccko, 610 A.2d at 546 (citing Zarrella v. Robinson, 460 A.2d 415, 418 (R.I. 1983)). "The trial justice may reject the award or order a remittitur of the award if it shocks the conscience or it 'clearly appears to be excessive, or to represent the passion and prejudice of the jury rather than their unbiased judgment.'" Id. at 546 (quoting Zarrella, 460 A.2d at 418-19).

We "will affirm a trial justice's decision on a motion for a new trial as long as the trial justice conducts the appropriate analysis, does not overlook or misconceive material evidence, and is not otherwise clearly wrong." Murray, 945 A.2d at 334 (quoting Morrocco v. Piccardi, 674 A.2d 380, 382 (R.I. 1996)).

### III

### Discussion

In his appeal, defendant contends that, despite the remittitur, the final ruling rendered in favor of plaintiff for $925,000 plus interest is excessive, punitive, and shocks the conscience. He argues that the jury was influenced by sympathy, passion, and prejudice when it awarded plaintiff $1.75 million. The defendant asserts that plaintiff's medical expenses totaled approximately $135,000, and he notes that plaintiff did not make a claim for lost wages. He also

claims that, during closing arguments, plaintiff's counsel requested that the jury award plaintiff $732,165 in damages, an amount $1 million less than what was actually awarded, and nearly $200,000 less than what was ordered on the remittitur.

The plaintiff argues that the evidence supports the award of $925,000. Notably, plaintiff points to the medical expenses, as well as the pain and suffering he incurred in both the immediate aftermath of the assault and the rehabilitation process. He also contends that his attorney never made a request for any specific monetary amount during his closing argument. Instead, plaintiff asserts that counsel merely used a demonstrative aid to provide the jury with a method for calculating damages as a "guideline."

After careful consideration of the record, we conclude that the trial justice acted properly in granting defendant's motion and reducing the damages to $925,000. In her decision, the trial justice clearly articulated her role in deciding a motion for a new trial or a remittitur. After examining the evidence presented, she concluded that there was competent credible evidence to support the jury's award of medical expenses. The trial justice then discussed the jury's consideration of plaintiff's injuries, specifically their length and severity, as well as how those injuries affected his life on a day-to-day basis. Although the trial justice commented that plaintiff made a "remarkable recovery," she acknowledged that this did not diminish the permanency of his injuries. The trial justice found that "[t]here is compelling and credible evidence by the plaintiff of the pain that he endured and that he continues to endure, the suffering at the time of the injury and in his extensive recovery period, and the humiliation, embarrassment, anguish, grief, [and] anxiety during that recovery period to this day."

The trial justice recognized that the guideline used by plaintiff's counsel to calculate compensatory damages suggested a verdict around $1 million less than what was returned by the

jury.  Additionally, she determined that the verdict reflected "that the jury acted with some degree of sympathy, passion, and prejudice" and concluded that the original award shocked the conscience.  She noted, however, that the credible evidence presented at trial justified an award of $925,000, which provided plaintiff "with approximately $30 per day" for the 51.3 years of his life expectancy.

A careful review of the record demonstrates that the trial justice properly considered and weighed the testimony and evidence presented.  Given that she did not misconceive or overlook material evidence, as well as the great weight the trial justice is accorded in ruling on such motions, this Court sees no basis for overturning her ruling.  See Murray, 945 A.2d at 334.

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the remittitur of the Superior Court to which we remand the record in this case.



**TITLE OF CASE:**          Kevin R. Hough v. Shawn P. McKiernan et al.

**CASE NO:**          No. 2013-90-Appeal.
(PC 08-5961)

**COURT:**          Supreme Court

**DATE OPINION FILED:**  October 17, 2014

**JUSTICES:**          Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**          Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Kristin E. Rodgers

**ATTORNEYS ON APPEAL:**

For Plaintiff:  William M. Heffernan, Esq.

For Defendant:  Peter A. Clarkin, Esq.