**Supreme Court**

No. 2012-59-Appeal.
(PC 06-650)

Donna Rose                          :

v.                          :

Christopher Cariello et al.                          :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Donna Rose                          :

v.                          :

Christopher Cariello et al.                          :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.**   The defendants, Christopher Cariello and James Cariello (defendants or Cariellos), appeal from a judgment of the Superior Court granting the plaintiff's motion for a new trial and/or additur, after a jury trial in this negligence action.  This case came before the Supreme Court for oral argument on January 23, 2014, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After carefully considering the written and oral submissions of the parties, we are satisfied that this appeal may be resolved without further briefing or argument.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

This case arises out of an automobile accident that occurred on September 30, 2003, near the former exit 19[1] on Route 95 in Providence, Rhode Island.

---

[1] The roads and the highway exit in that area have since been changed and no longer reflect the configuration of roads at the time of the accident.

At approximately 10:30 a.m., plaintiff Donna Rose was driving south on Route 95 in the vicinity of the Rhode Island Hospital exit. She was slowing down in order to change lanes[2] when her car was struck from behind by a car operated by defendant Christopher Cariello.[3] The plaintiff testified that, after being struck, "[her] car lunged forward" and that "[her] head went way back."

Immediately after the accident, plaintiff was brought to the emergency room of Rhode Island Hospital but was released to return to her home later that day. A few days after, she went to the emergency room of Memorial Hospital in Pawtucket, Rhode Island, because of pain in her back and legs. The plaintiff's back pain persisted without improvement, leading her to consult a series of doctors and chiropractors in the years following the accident.[4] The plaintiff underwent two surgical procedures on her spine, the first in April 2005 and the second in March 2008.

The plaintiff filed the instant suit on February 2, 2006. A jury trial was held in the Providence County Superior Court between October 19 and 25, 2011. At trial, state police officer Simon Liu, who investigated the accident, testified that the accident occurred when defendant's vehicle struck plaintiff's vehicle from the rear while traveling in the right lane of Route 95. The plaintiff then testified as to the circumstances of the accident. She explained that she "was in the right most [sic] lane of the * * * two lanes that were through traffic," not counting the exit lanes, when the accident occurred.

---

[2] There is some dispute as to which lane the accident occurred in, as will be discussed hereafter.

[3] The vehicle was registered to James Cariello, Christopher's father, but it was used by Christopher, with his father's permission, as Christopher's primary vehicle.

[4] The plaintiff's extensive medical records from her ongoing treatment were submitted into evidence at trial as full exhibits.

She testified that, prior to the accident, she had been largely self-sufficient, able to do her own shopping, house-cleaning, and laundry, as well as working full-time in a mailroom.[5] She explained that, after the accident, she was no longer able to be self-sufficient and was not able to return to work because of the pain. Kevin Cordeiro, a longtime friend of plaintiff's, corroborated plaintiff's testimony, averring that, before the accident, plaintiff had been an active person but that now she was unable to perform everyday tasks, could no longer drive, and was in pain. The plaintiff's sister, Linda Shippee, also testified that "she [plaintiff] can't walk and exercise. She used to go shopping more. She used to get out more." The plaintiff's brother-in-law, Willie Detonnayo, summarized plaintiff's life after the accident as being "helpless and hopeless."[6]

In addition, plaintiff submitted the testimony of two expert witnesses. The first, Dr. Allan Feldman, an economist, testified as to plaintiff's economic loss as a result of her injury. He estimated that plaintiff's economic losses, assuming part-time employment, amounted to $99,000 and, if full-time employment were assumed, would be $284,000.

The plaintiff's second expert witness, Dr. Edward Feldmann, a neurologist, testified as to plaintiff's injuries. He stated that he reviewed plaintiff's medical records and also examined her professionally on April 30, 2011. He summarized plaintiff's medical history, noting that she had no history of lower back pain prior to the accident in 2003 and that her back pain, as a result of damage to a disc of her spine, prevented her from working. He further stated that her medical records revealed that plaintiff had degenerative disc disease, which he characterized as being common to the general population and often asymptomatic, and which likely preexisted the accident. Doctor Edward Feldmann also explained that asymptomatic degenerative disc disease could be made symptomatic as a result of trauma. He diagnosed plaintiff as suffering from an

---

[5] The plaintiff has been legally deaf since birth.
[6] John Birchall, an automobile appraiser, also testified on behalf of plaintiff.

injury to the spinal disc and nerve roots, a condition called radiculopathy, as well as from lumbosacral disc disease. He opined, to a reasonable degree of medical certainty, that the injury was caused by the accident in September 2003. He also concluded it to be more likely than not that plaintiff's injury was permanent and that it would be unlikely that plaintiff would ever be able to return to work.

The plaintiff also submitted into evidence her extensive medical records as well as affidavits from four medical professionals all of whom had provided medical services to her in the years following the accident. Each of the affiants stated that plaintiff's various medical treatments were necessary as a result of the September 2003 accident.

The defendant, Christopher Cariello, testified that he was merging onto the on-ramp when he saw plaintiff "driving * * * in the right lane erratically, slowly, not following along at 50 miles an hour with traffic * * *." He stated that his speed at impact was about ten miles per hour and that his speed on the on-ramp was twenty miles per hour.

The defendants then offered the expert testimony of Dr. Thomas Morgan, a neurologist. Doctor Morgan had not examined plaintiff himself but he conducted a medical records review, as well as a review of the accident reports, and rendered his opinion as to her medical condition. He agreed that plaintiff had a preexisting "moderate advanced degenerative disc disease." He opined that plaintiff suffered pulled neck muscles as a result of the accident, which he characterized as "a typical whiplash scenario" from a rear-end motor vehicle accident. He stated that generally whiplash injuries are minor and have an average healing time of a few days to a few weeks, as long as there is no neurological damage associated with them. He testified that his review of the medical records and his experience with rear-end motor vehicle accidents do not support a finding that the accident aggravated plaintiff's preexisting degenerative disc disease.

Doctor Morgan did agree that an asymptomatic condition could be rendered symptomatic as a result of trauma but disagreed with Dr. Edward Feldmann's testimony and the opinions of plaintiff's treating physicians that the accident caused plaintiff's back problems.

After the parties rested, the jury returned a verdict for plaintiff, awarding damages to her in the amount of $193,584 and finding that defendant was 75 percent at fault in causing the accident. Judgment was entered to that effect on October 25, 2011.

On October 27, 2011, plaintiff filed a motion for a new trial and/or additur on the grounds that the verdict was against the weight of the evidence and that the jury's award of damages failed to adequately compensate plaintiff for her injuries so as to shock the conscience. After oral argument on November 15, 2011, the trial justice issued a written decision on January 26, 2012.

In his decision, he summarized the evidence at trial, noting that the trial took place eight years after the accident occurred. The trial justice recognized the discrepancy in the testimony as to the lane in which the accident took place but stated that he was "inclined to believe that this [discrepancy] resulted from the lengthy span of time between the day of the accident and the trial" and further, that "there might have been confusion in the witnesses' recollection regarding a nearby exit lane and whether or not to count this as a travelling lane." Notwithstanding those inconsistencies, the trial justice found plaintiff's testimony to be credible. The trial justice also stated that the apportionment of negligence between the parties was not against the preponderance of the evidence and would, therefore, not be disturbed.

The trial justice went on to review the conflicting expert testimony of Dr. Edward Feldmann and Dr. Morgan both as to plaintiff's medical condition and whether the accident had caused it. He also considered the evidence of plaintiff's primary treating physician, Dr.

Frederick Harrington, although he noted that Dr. Harrington had not given an opinion as to the causation of plaintiff's injuries.

The trial justice found that "[t]he jury's award of $193,584 shock[ed] the conscience of this [c]ourt in its failure to respond to the merits of this issue and in its failure to administer substantial justice." He noted that the award failed to "cover [p]laintiff's medical bills, lost wages or any pain and suffering."[7] The trial justice went on to suggest reasons for the inadequacy of the award, finding it likely that either the jury erroneously considered plaintiff's health insurance coverage or that the jury disregarded the testimony as to the potential for exacerbation of a preexisting condition and, consequently, undervalued the severity of the injuries sustained by plaintiff. Accordingly, he granted an additur of $428,416 to the jury award for a total award of $622,000 and alternatively, if defendants rejected the additur, granted plaintiff's motion for a new trial on the issue of damages only. An order to that effect entered on February 10, 2012.

The defendants filed a notice of appeal to this Court on February 10, 2012, and thereafter, on February 23, 2012, rejected the additur granted by the Superior Court.[8] Because defendants rejected the additur, it is not an issue on appeal before this Court. Accordingly, we will address only defendants' appeal of the trial justice's grant of the motion for a new trial on the issue of damages.

---

[7] The plaintiff's total medical expenses amounted to $269,000.

[8] The defendants filed a motion to stay the judgment of the Superior Court with this Court on February 21, 2012. This Court granted the stay conditioned upon the filing of a supersedeas bond in the Superior Court.

## II

## Standard of Review

Our standard for reviewing a trial justice's decision in a motion for a new trial is well settled. "A trial justice's role in considering a motion for a new trial is that of a superjuror, who must weigh the evidence and assess the credibility of the witnesses." Gomes v. Rosario, 79 A.3d 1262, 1265 (R.I. 2013) (quoting McGarry v. Pielech, 47 A.3d 271, 280 (R.I. 2012)). He or she must exercise his or her independent judgment in considering all the material evidence in the case, pass on the weight of the evidence and the credibility of the witnesses, and decide whether the jury verdict responds to the evidence presented and does justice between the parties. See id. "If the trial justice is persuaded that 'the verdict is wrong because it fails to respond truly to the merits and to administer substantial justice between the parties or is against the fair preponderance of the evidence, he [or she] should set aside the verdict and order a new trial.'" McGarry, 47 A.3d at 280 (quoting Morgera v. Hanover Insurance Co., 655 A.2d 698, 698 (R.I. 1995) (mem.)). "If the trial justice has carried out the duties required by Rule 59 of the Superior Court Rules of Civil Procedure and our decided cases, his or her decision is accorded great weight by this Court and will not be disturbed unless the plaintiff 'can show that the trial justice overlooked or misconceived material and relevant evidence or was otherwise clearly wrong.'" Gomes, 79 A.3d at 1265 (quoting McGarry, 47 A.3d at 280).

"Although the fixing of damages is normally a function of the jury, it may be rejected by a trial justice on a motion for a new trial." Bonn v. Pepin, 11 A.3d 76, 78 (R.I. 2011) (quoting Reccko v. Criss Cadillac Co., 610 A.2d 542, 545-46 (R.I. 1992)). "A trial justice may disregard an award of damages * * * 'only if the award shocks the conscience or indicates that the jury was influenced by passion or prejudice or if the award demonstrates that the jury proceeded from a

clearly erroneous basis in assessing the fair amount of compensation to which a party is entitled.'" Murray v. Bromley, 945 A.2d 330, 333-34 (R.I. 2008) (quoting English v. Green, 787 A.2d 1146, 1150 (R.I. 2001)).

## III

### Discussion

On appeal, defendants argue that the trial justice erroneously substituted his own judgment for that of the jury in considering the facts of the case. The defendants emphasize the discrepancies in the testimony as to which lane the accident occurred in, arguing that the jury's verdict finding plaintiff to be 25 percent at fault could only be explained by the jury's not finding plaintiff to be credible. The defendants also assert that plaintiff's medical records, in particular those of her primary treating physician, Dr. Harrington, contradict plaintiff's own testimony as to her medical condition.

We begin by noting, as defendants acknowledge, that the trial justice accepted the apportionment of liability between the parties. The issue of liability is, accordingly, not before this Court. To the extent that defendants rely on the discrepancies in the testimonies as to which lane the accident occurred in to challenge the determination of plaintiff's overall credibility, we will briefly address defendants' argument. We note that the trial justice explicitly recognized these inconsistencies but ultimately concluded that plaintiff was a credible witness. We do not ordinarily second-guess a trial justice's credibility determination of a witness's testimony. This Court is limited to reading from an inanimate transcript of the record. As we have stated, "it is the trial justice who has the opportunity to observe the witnesses as they testify and therefore is in a better position to weigh the evidence and to pass upon the credibility of the witnesses * * *."

Harvard Pilgrim Health Care of New England, Inc. v. Gelati, 865 A.2d 1028, 1034 (R.I. 2004) (quoting Lembo v. Lembo, 677 A.2d 414, 417 (R.I. 1996)).

The defendants also assert that the trial justice improperly substituted his own judgment for that of the jury. This argument overlooks the fact that it is the explicit duty of the trial justice in deciding a motion for a new trial to "exercise his or her independent judgment in passing upon the weight of the evidence and the credibility of the witnesses." Connor v. Schlemmer, 996 A.2d 98, 114 (R.I. 2010) (quoting Seddon v. Duke, 884 A.2d 413, 413 (R.I. 2005) (mem.)). In his decision, the trial justice summarized the expert testimony and carefully considered the evidence of Dr. Harrington as to plaintiff's surgeries and the fact that Dr. Harrington characterized plaintiff's symptoms when she returned to him for treatment after the first surgery as being "debilitating, unremitting and severe" pain. We are of the opinion that the trial justice more than adequately set forth sufficient record evidence to support his independent judgment.

The defendants make much of some discrepancies between plaintiff's testimony at trial about her physical condition and the evidence in plaintiff's medical records, in particular the fact that Dr. Harrington's report on plaintiff's progress after her first surgery was that she had very little pain and an excellent range of motion while plaintiff testified that she was still in pain after the surgery. We are not persuaded by this argument. We note that her testimony that she obtained no relief from her first surgery appears to be supported by the fact that plaintiff's medical records clearly establish that she needed and underwent a second back surgery within three years of her first one. The trial justice deemed plaintiff's testimony to be credible. Moreover, the trial justice explicitly clarified that Dr. Harrington's report on plaintiff's progress was for the period "about or around the time of the surgery." In any event, we have made it clear that "the trial justice need not engage in an exhaustive review and analysis of all of the evidence

and testimony presented at trial * * * [but] need only <u>make reference to such facts</u> disclosed by the testimony <u>as have motivated his or her conclusion</u>." <u>Bonn</u>, 11 A.3d at 78 (quoting <u>Bourdon's, Inc. v. Ecin Industries, Inc.</u>, 704 A.2d 747, 758 (R.I. 1997) (emphasis in original)). Our review of the record leads us to the conclusion that the trial justice engaged in the proper analysis in passing on the weight of the evidence and we agree with his conclusions.

The defendants finally contend that "[t]he mere fact that the jury award is less than the plaintiff's total claimed damages is * * * an insufficient and incorrect reason to grant an [a]dditur or a [m]otion [f]or [n]ew [t]rial." The defendants also ascribe error to the trial justice's surmise regarding the basis of the inadequacy of the jury award.

We will accord great deference to a trial justice's finding that a jury's award of damages "shocks the conscience of the court." <u>See</u> <u>English</u>, 787 A.2d at 1150. Here, the trial justice stated that the award was "inadequate," explaining that it "does not cover [p]laintiff's medical bills, lost wages or any pain and suffering." Although the trial justice did not expressly discredit the expert testimony of Dr. Morgan, his findings and discussion of the damage award make it clear that he did not accept Dr. Morgan's assessment of plaintiff's injuries and the cause of plaintiff's ongoing back problems. We note that the trial justice specifically added that Dr. Morgan acknowledged that a preexisting condition can be exacerbated due to trauma inflicted by an accident and did not completely discount that possibility. We cannot conclude based on our review of the evidence that the trial justice was clearly wrong in his determination that the jury's award of damages was inadequate. Accordingly, we will not disturb his decision on review.

We are further satisfied that the trial justice's surmises as to the basis of the inadequacy of the award were not error. Having already concluded that the jury award was so inadequate as to shock the conscience of the court, it was within his discretion to grant a new trial as to

- 10 -

damages for that reason. He was not required to further support his decision. While he might have refrained from such suppositions, we cannot and will not overturn his decision based on what amounted to mere dicta.

**IV**

**Conclusion**

For the foregoing reasons, the judgment of the Superior Court is affirmed. The record in this case shall be returned to that tribunal for a new trial on the issue of damages.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

TITLE OF CASE:        Donna Rose v. Christopher Cariello et al.

CASE NO:              No. 2012-59-Appeal.
                      (PC 06-650)

COURT:                Supreme Court

DATE OPINION FILED:   March 4, 2014

JUSTICES:             Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

WRITTEN BY:           Associate Justice Gilbert V. Indeglia

SOURCE OF APPEAL:     Providence County Superior Court

JUDGE FROM LOWER COURT:

                      Associate Justice Brian P. Stern

ATTORNEYS ON APPEAL:

                      For Plaintiff:  Lauren E. Jones, Esq.

                      For Defendants:  Peter A. Clarkin, Esq.