**Supreme Court**

No. 2013-132-Appeal.

No. 2014-164-Appeal.

(PC 07-1178)

Pawtucket Redevelopment Agency          :

v.          :

Patricia Brown.          :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Pawtucket Redevelopment Agency     :

v.     :

Patricia Brown.     :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Indeglia, for the Court.** The defendant, Patricia Brown, appeals from a Superior Court ruling granting the motion of the plaintiff, Pawtucket Redevelopment Agency (PRA), for a new trial on the defendant's counterclaim against the PRA. The plaintiff also appeals the denial of its renewed motion for judgment as a matter of law. This case came before the Supreme Court on October 28, 2014, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and reviewing the memoranda submitted on behalf of the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeals at this time without further briefing or argument. For the reasons set forth herein, we affirm the judgment of the Superior Court.

**I**

**Facts and Travel**

On March 6, 2007, the PRA filed a complaint in Providence County Superior Court against defendant. The complaint alleged that the PRA had entered into an agreement with defendant to loan her up to $100,000 toward the purchase, relocation, and maintenance of the

- 1 -

Silver Top Diner.[1]  The agreement was verified by defendant's execution of a promissory note, an indemnification agreement, and a U.C.C. financing statement.  Pursuant to the agreement, plaintiff advanced defendant $52,878.25.  The plaintiff averred that defendant had defaulted on repayment of the advance and refused to repay the loan, which constituted a breach of the agreement.[2]  On May 8, 2007, defendant filed an answer and a counterclaim.

The trial commenced on October 3, 2012.  The PRA introduced testimony from the current executive director of the PRA, Barney Heath, as well as the former executive director, Michael Cassidy.  During defendant's case-in-chief, testimony was heard from Herbert Weiss, an employee of the city's planning and redevelopment office; Laurie DeRobbio, a contractor who consulted with defendant; Donna Brady, a former property owner in the area of the proposed new site of the diner; and defendant herself.

It was adduced at trial that the PRA is a statutorily created quasi-public entity whose purpose is to allocate federal funds as a means of promoting economic development with the goal of improving the community and living environment in the City of Pawtucket (city or Pawtucket).  In late 2001, the PRA learned that the Silver Top Diner was being evicted from its location in Providence.  It was undisputed that the diner was not permitted to retain its Providence location.  The defendant was contacted by Weiss to discuss the possibility of bringing the diner and its business to Pawtucket.  Weiss reported back to Cassidy.  At the time,

---

[1] The Silver Top Diner was a fixture of the area that now surrounds Providence Place Mall since the 1930s.  Operated out of a classic Kullman Dining Car, in its heyday the Silver Top Diner serviced the factory workers returning home from the third shift.  In more recent years, the diner catered to the late-night scene and no doubt features prominently in many after-hour tales.  The history of the Silver Top Diner, as well as its struggle with the City of Providence to remain in its original location is chronicled in both <u>Diners of New England</u> (2005) by Randy Garbin and Donald Kaplan and Alan Bellink's <u>Classic Diners of the Northeast</u> (1986).
[2] The plaintiff also requested a declaratory judgment to enforce its security interest in the diner pursuant to the U.C.C. financing statement.  The trial justice granted plaintiff the requested declaratory relief, which is not at issue in this appeal.

Cassidy was not only Weiss's superior at the planning department, but also the executive director of the PRA.

There was testimony that defendant, Cassidy, Weiss, and Bernard Buoncervello[3] met a number of times to discuss possible sites for the diner and also to discuss how the PRA would be able to help with the project. By letter dated January 30, 2002, Cassidy, in his capacity as the city's director of planning and development (as opposed to his role with the PRA), contacted defendant. Cassidy informed defendant of a possible site that defendant might want to consider. He also explained that the acquisition of a "24/7" victualling license would rest entirely with the city council, but that the city's planning and development office would be open to discussing options for defendant to explore to obtain financial assistance with her project.

Cassidy testified regarding further discussions among the above-named individuals. He explained that on February 27, 2002, in his capacity as the executive director of the PRA, he sent defendant a letter which stated that the PRA agreed to approve defendant's "request for a Commercial Rehab loan to assist [defendant in] relocate[ing] the Silver Top Diner to the City of Pawtucket." The letter set forth seven enumerated conditions on the loan approval, including that:

> (1) The PRA will provide a $100,000 loan to assist with all relocation costs of the diner, in accordance with a disbursement schedule determined by the PRA;
>
> (2) The PRA will require a first position mortgage and U.C.C. lien on the diner and on the property that is deeded for the diner site and that ownership of the physical diner structure must be transferred to defendant prior to closing;
>
> (3) The loan will be amortized and repaid over a fifteen-year period, interest rate of the loan will be 5 percent, and that payment is due upon certification of occupancy to operate;

---

[3] At trial, defendant testified that while she was the owner of the business, Buoncervello was the owner of the building in which the business operated. There was also testimony regarding a side agreement between Buoncervello and defendant regarding the transfer of title to the building. That agreement is not relevant to this appeal.

(4) The PRA has approved temporary storage of the diner on the PRA's property until the diner is relocated to a final site;

(5) The PRA will request the City of Pawtucket to transfer three lots to the PRA to create a development site for the diner;

(6) The PRA will require a competitive bid process for any and all work that will be paid for with PRA funds; and

(7) The PRA will require inspection of the work prior to the release of any payments for the relocation costs.

At trial, there was also testimony as to the division of responsibilities between the PRA and defendant regarding the project. The parties agreed that the PRA was to be responsible for the physical improvements to the land upon which the diner was to be relocated, but that defendant would be responsible for the development of the building itself. The defendant did not dispute the division of responsibilities, but rather contended that the PRA indicated to her that it would "hold [her] by [the] hand every step of the way," and that it had failed in that regard.

It was further testified that on March 8, 2002, defendant signed a promissory note and other related documents to finalize the loan described in the February 27, 2002, letter. After the loan documents were signed, the diner was moved from its Providence location to the Pawtucket site. Following the relocation, a series of efforts were undertaken by the parties to make the operation of the diner in Pawtucket a reality, but all these efforts were for naught.

The testimony at trial indicated that on June 27, 2002, defendant submitted a site plan to the PRA that was developed by a contractor named William Gervais. The bare-bones plan merely indicated where on the piece of property the diner would be situated. Meanwhile, the PRA handled a request to the zoning board for a variance for the project. Additionally, the PRA arranged for a neighborhood meeting to take place in the presence of the city council member whose district covered the site of the diner to see if he would support defendant's request for a

"24/7" victualling license. To defendant's dismay, she encountered significant opposition from neighbors at the meeting; and, ultimately, the council member stated that he would not support her request if it appeared before the city council.

In light of this opposition, defendant stated that she would seek to find another site to relocate her business. Yet, for four months, the PRA did not hear from defendant regarding the project. In the spring of 2003, defendant restarted her communications with the PRA. By that time, the PRA had contacted an engineering firm named Ayoub Engineering to craft a site plan for the lot on which the diner would sit. The PRA suggested that defendant could also utilize Ayoub to obtain a building design. In May of 2003, defendant entered into a contract with Ayoub for the building design; and both the Gervais site plan and the design plan made by Ayoub were put out to bid. Unfortunately, no bids were received.

Cassidy testified that, as a result, he met with defendant to discuss possible courses of action. Cassidy explained that one possible option would be to seek to obtain an estimate of the construction costs from which a contract could later be sought. Although defendant was responsible for the building component of the project, the PRA obtained a construction cost estimate from a company called Site Tech. After receiving the estimate from Site Tech, defendant and DeRobbio, the owner of Capital City Construction, engaged in discussions regarding construction on the project. DeRobbio testified that her firm wanted to perform the construction work for the project. Additionally, DeRobbio explained that she believed the Site Tech estimate to be too costly, and felt that the construction could be completed for less. However, neither defendant nor DeRobbio ever produced a written plan required for the PRA to approve construction.

There was testimony that, at the suggestion of the PRA, a consultant to the Pawtucket Business Development Corporation (PBDC) produced a business plan based on the Site Tech estimate for defendant with the aim of her being able to utilize it to secure bank financing for construction of the building. However, bank financing for the project was not secured.

At trial, after the PRA rested, defendant moved for judgment as a matter of law. The trial justice denied the motion, which was not later renewed. At the close of all of the evidence, the PRA moved for judgment as a matter of law on both the PRA's complaint and on defendant's counterclaim. The trial justice denied the motions. Although she found defendant's filings somewhat confusing, the trial justice nonetheless allowed the case to go to the jury on defendant's claim for negligent misrepresentation concerning the scope of the relationship between the PRA and defendant and the business advice that the PRA would provide her.[4] In addition, plaintiff's claims for breach of contract and for book account were submitted to the jury. On October 10, 2012, the jury returned a verdict in favor of the PRA on its book account claim for $52,878.25. The jury also rendered a verdict in favor of defendant on her amended counterclaim for negligent misrepresentation for $112,878.25. Judgment on each of the jury verdicts was entered that same day.

Subsequently, the PRA filed a renewed motion for judgment as a matter of law on defendant's counterclaim and a motion for a remittitur or alternatively a new trial on the counterclaim. On October 26, 2012, a hearing was held on the motions. Viewing all the evidence in the light most favorable to the nonmoving party, the trial justice denied the PRA's renewed motion for judgment as a matter of law.

---

[4] At a hearing prior to the jury charge, the trial justice granted defendant's motion to amend her counterclaim to conform to the evidence adduced at trial. Although the trial justice acknowledged that she "ha[d] a bit of a difficult time sorting through the factual allegations and a

In reviewing the motion for a new trial, the trial justice outlined her role as the "superjuror." The trial justice summarized the evidence adduced at trial and then proceeded to discuss the credibility of each of the witnesses. She noted that the PRA's witnesses "were both professional, straightforward, and persuasive" and "testified consistently to the travel of the project." In stark contrast, the trial justice found that defendant was someone who sought to "continual[ly] blame * * * others at all points in this project" and who took "very little responsibility for her own actions," which ultimately left the trial justice to "seriously question her credibility." These credibility deficiencies gave the trial justice "great pause in accepting the defendant's representation that Cassidy said he would hold her hand every step of the way."

Indeed, the trial justice found that "the credible evidence of record does not support a finding by a preponderance of the evidence that the defendant's reliance on anything the PRA may have said or done was reasonable under the circumstances." Further, the trial justice found that the jury award on defendant's counterclaim had "no rational basis in the evidence whatsoever." Therefore, she granted the PRA's motion for a new trial on defendant's counterclaim, finding that "the damages award[ed] to the defendant failed to respond to the controversy, [did] not do substantial justice between the parties, and [was] also against the fair preponderance of the evidence." Given this disposition, the trial justice found it unnecessary to address the PRA's motion for a remittitur.

On November 7, 2012, defendant filed a notice of appeal. The notice sought to appeal a judgment that was purportedly entered on October 19, 2012. The notice also mentioned the granting of a new trial and a counterclaim. The following day, on November 8, 2012, a judgment was entered in the Superior Court that, <u>inter alia</u>, denied plaintiff's motion for

---

legal recognizable cause of action," she determined that "it appear[ed] to the [c]ourt that the legal cause of action set forth in this counterclaim is a negligent misrepresentation claim."

judgment as a matter of law and granted plaintiff's motion for a new trial and to set aside the jury verdict on defendant's counterclaim. On January 3, 2013, the PRA filed a notice of appeal seeking review of the denial of plaintiff's motion for judgment as a matter of law on defendant's counterclaim.

## II

### Standard of Review

When ruling on a motion for judgment as a matter of law, "the trial justice is called upon to consider 'the evidence presented at trial in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses * * *.'" Almonte v. Kurl, 46 A.3d 1, 16 (R.I. 2012) (quoting Swerdlick v. Koch, 721 A.2d 849, 856 (R.I. 1998)). The trial justice must deny the motion "if there are factual issues concerning which reasonable people may reach differing conclusions." Botelho v. Caster's, Inc., 970 A.2d 541, 545 (R.I. 2009). "It is a fundamental principle that this Court reviews in a de novo manner a trial justice's decision with respect to a motion for judgment as a matter of law * * * employ[ing] the same standard as did the trial justice." Almonte, 46 A.3d at 16.

"With regard to the motion for a new trial, it is well settled that our review of a trial justice's decision is deferential." Martin v. Lawrence, 79 A.3d 1275, 1283 (R.I. 2013). "A trial justice's role in considering a motion for a new trial is that of a superjuror, who must weigh the evidence and assess the credibility of the witnesses." Rose v. Cariello, 85 A.3d 618, 622 (R.I. 2014) (quoting Gomes v. Rosario, 79 A.3d 1262, 1265 (R.I. 2013)). In performing this task, "[t]he trial justice is also free to 'reject some evidence and draw inferences which are reasonable in view of the testimony and evidence in the record.'" King v. Huntress, Inc., 94 A.3d 467, 481 (R.I. 2014) (quoting Botelho, 970 A.2d at 545). If the trial justice has carried out the duties

required by Rule 59 of the Superior Court Rules of Civil Procedure then "'his or her decision is accorded great weight by this Court' and 'his or her determination either granting or denying a motion for new trial will not be disturbed unless * * * [he or she] has overlooked or misconceived material and relevant evidence or was otherwise clearly wrong.'" King, 94 A.3d at 482 (quoting Botelho, 970 A.2d at 546).

Further, "[a]lthough the fixing of damages is normally a function of the jury, it may be rejected by a trial justice on a motion for a new trial." Rose, 85 A.3d at 623 (quoting Bonn v. Pepin, 11 A.3d 76, 78 (R.I. 2011)). "If the trial justice is persuaded that 'the verdict is wrong because it fails to respond truly to the merits and to administer substantial justice between the parties or is against the fair preponderance of the evidence, he [or she] should set aside the verdict and order a new trial.'" McGarry v. Pielech, 47 A.3d 271, 280 (R.I. 2012) (quoting Morgera v. Hanover Insurance Co., 655 A.2d 698, 698 (R.I. 1995) (mem.)).

## III

### Discussion

We pause at the outset to address several issues relating to the notices of appeal filed in this matter.

Article I, Rule 4(a) of the Supreme Court Rules of Appellate Procedure provides that a notice of appeal must be filed "within twenty (20) days of the date of the entry of the judgment, order, or decree appealed from." The plaintiff's notice of appeal was dated and filed on January 3, 2013, which is outside of the twenty-day window from the judgment entered on November 8, 2012. "It is well settled that 'the time specified in Rule 4(a) is mandatory, and that once the prescribed time has passed there can be no review by way of appeal.'" Iozzi v. City of Cranston,

52 A.3d 585, 588 (R.I. 2012) (quoting <u>Wachovia Bank v. Hershberger</u>, 911 A.2d 278, 279-80 (R.I. 2006) (mem.)).

At oral argument, plaintiff's counsel averred that the appeal was timely. He made reference to our briefing order which recognized the following:

> "The parties stipulate that the Court may accept copies of the judgment on the defendant's counterclaim and the notice of appeal filed by the plaintiff from that judgment, in lieu of the originals."

That order does not help plaintiff. While parties may agree to accept copies of original documents, the matter still remains that the notice of appeal was dated and filed on January 3, 2013. Accordingly, plaintiff did not timely appeal. The filing of a timely notice of appeal is the "sole <u>sine qua non</u> of the taking of the appeal." <u>State v. Hallenbeck</u>, 878 A.2d 992, 1020 (R.I. 2005) (quoting Joseph R. Weisberger, <u>Rhode Island Appellate Practice</u> cmt. 3.3 at 14 (1993)). Indeed, Article I, Rule 3(a) of the Supreme Court Rules of Appellate Procedure "makes clear that failure to file a timely notice of appeal renders any purported appeal invalid." <u>Martin v. Lilly</u>, 505 A.2d 1156, 1159 (R.I. 1986). No stipulation of the parties can overcome this procedural requirement. Additionally, there is nothing in the record indicating that the appeal was otherwise timely. We therefore decline to address the merits of plaintiff's appeal of the denial of its motion for judgment as a matter of law.[5] <u>See</u> <u>DiLibero v. State</u>, 996 A.2d 599, 601 (R.I. 2010) (mem.) (holding that "this Court will not entertain untimely appeals").

---

[5] Even if we were to consider plaintiff's appeal, we still would not find that there was any error in the trial justice's denial of the motion. Although the trial justice ultimately acknowledged that she did not believe defendant's assertion that the PRA misrepresented the scope of the relationship between it and defendant, the trial justice still recognized, appropriately, that reasonable minds could draw "conflicting conclusions" on that issue. Therefore, the motion for judgment as a matter of law was properly denied. <u>See</u> <u>Botelho v. Caster's, Inc.</u>, 970 A.2d 541, 545 (R.I. 2009).

Conversely, the errors with defendant's notice of appeal, although there are many, are not necessarily fatal to the perfection of her appeal.[6] Rule 3(c) provides that "[t]he notice of appeal * * * shall designate the judgment, order or decree or part thereof appealed from." Here, defendant's notice stated that it sought to appeal a judgment entered on October 19, 2012. Specifically, the notice sought to appeal from paragraph five of that judgment. The record makes clear that no judgment in this matter was entered on that date.

However, on that date, the PRA did file a "Motion for a New Trial." In that motion, below the paragraph numbered "4," plaintiff requested that the trial justice "set aside the jury's verdict and award herein as to Defendant's Counterclaim and grant and award to Plaintiff a new trial on Defendant's Counterclaim." The defendant's notice of appeal also mentioned the granting of a new trial and a counterclaim. Accordingly, it is clear that defendant sought to appeal the granting of the PRA's motion for a new trial and setting aside the jury verdict on defendant's counterclaim. See Greensleeves, Inc. v. Smiley, 942 A.2d 284, 289-92 (R.I. 2007). We therefore proceed to address the merits of defendant's appeal.[7]

---

[6] We note that defendant's notice of appeal is date-stamped November 9, 2012. However, the docket sheet indicates that defendant's notice of appeal was filed on November 7, 2012, prior to the entry of judgment. Even if filed prematurely, we may still treat defendant's notice of appeal as timely. See Russell v. Kalian, 414 A.2d 462, 464 (R.I. 1980) (noting that for certain prematurely filed notices of appeal we may "treat the appeal as if it had been timely filed after the entry of judgment").

[7] In addition to the technical error in defendant's notice of appeal, defendant's Rule 12A statements come dangerously close to constituting a waiver of the issue on appeal. See Wilkinson v. State Crime Laboratory Commission, 788 A.2d 1129, 1131 n.1 (R.I. 2002) ("Simply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue."). Also, to the extent defendant tries to argue in her Rule 12A statements that the trial justice should have granted defendant's motion for judgment as a matter of law, we need not address such argument. The defendant "failed to renew [her motion] at either the close of the evidence or after the jury's verdict * * * [and] [t]his failure * * * is fatal to [her] efforts to renew the arguments [she] now makes before us." Blue Coast, Inc. v. Suarez Corporation Industries, 870 A.2d 997, 1008 (R.I. 2005).

In doing so, we note that the trial justice conducted an extensive review of the proceedings below, passing on the weight of the evidence and assessing the credibility of the witnesses, including defendant herself. In this assessment, defendant was found to be not credible. Further, the trial justice found that it appeared that the PRA had attempted to provide defendant with the resources and services that it had promised her it would and that it was defendant herself who failed to fulfill her responsibilities to the project. Additionally, based on her independent review of the record, the trial justice found that the jury award on defendant's counterclaim had "no rational basis in the evidence whatsoever." In sum, the trial justice carefully and completely carried out her duties in ruling on a motion for a new trial.

Therefore, in no way has the defendant pointed to any instance in which the trial justice "overlooked or misconceived material and relevant evidence or was otherwise clearly wrong." Rose, 85 A.3d at 623 (quoting Gomes, 79 A.3d at 1265). Accordingly, we discern no error in the trial justice's decision to grant the plaintiff's motion for a new trial and to set aside the jury verdict on the defendant's counterclaim.

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The papers in this case may be returned to the Superior Court.

- 12 -



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**    Pawtucket Redevelopment Agency v. Patricia Brown.

**CASE NO:**    No. 2013-132-Appeal.
No. 2014-164-Appeal.
(PC 07-1178)

**COURT:**    Supreme Court

**DATE OPINION FILED:**    November 21, 2014

**JUSTICES:**    Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**    Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Kristin E. Rodgers

**ATTORNEYS ON APPEAL:**

For Plaintiff:  R. Kevin Horan, Esq.

For Defendant:  Arthur E. Chatfield, III, Esq.