Deborah Bates-Bridgmon et al.               :

v.                                          :

Heong's Market, Inc. d/b/a Roch's Market    :

et al.                                      :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Deborah Bates-Bridgmon et al.      :

v.      :

Heong's Market, Inc. d/b/a Roch's Market   :

et al.      :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.**   The plaintiffs, Deborah Bates-Bridgmon and her husband, Jackie Bridgmon (Deborah, Jackie, or plaintiffs), appeal following a Superior Court judgment in favor of the defendant, Heong's Market, Inc., d/b/a Roch's Market (Roch's Market or defendant).[1]

This appeal arises from Deborah's fall at Roch's Market in West Warwick.  The plaintiffs subsequently brought suit against defendant for the injuries Deborah sustained from her fall. After a trial in the Kent County Superior Court, a jury rendered a verdict for defendant. Following the unfavorable verdict, plaintiffs moved for a new trial and additur, pursuant to Rule 59 of the Superior Court Rules of Civil Procedure.  After hearing the parties, the trial justice denied the motion, concluding that he would not have reached a different result from that reached by the jury.

---

[1] To avoid confusion between Deborah Bates-Bridgmon and Jackie Bridgmon, we will refer to them as Deborah and Jackie, respectively.  No disrespect is intended.

- 1 -

On April 13, 2015, plaintiffs appealed and argued that the trial justice erred by denying their motion for a new trial and not instructing the jury on the "mode of operation" theory. Alternatively, plaintiffs ask this Court to adopt that theory for "the adjudication of premises liability claims brought by business invitees seeking compensation for injuries arising out of a business owner's self-service mode of operation." For the reasons set forth, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

The event underlying this appeal is Deborah's fall that occurred on March 23, 2009, at Roch's Market. On January 9, 2012, plaintiffs filed a complaint alleging that defendant negligently maintained the market's premises; that defendant breached a contractual duty owed to Deborah, a business invitee, by failing to maintain the property in a reasonable and safe manner; and that Jackie suffered a loss of consortium. On October 6, 2014, plaintiffs moved to amend their complaint so as to add an additional count based on the theory of mode of operation.[2] This motion was granted on November 3, 2014. With respect to this theory, plaintiffs alleged that "by its mode of operation, [defendant] is responsible for such negligence

---

[2] In their papers before us, plaintiffs describe the theory of mode of operation as "allow[ing] for a shifting in the burden of proof onto the party who was in the best position to identify the loss and cause of an injury sustained by an invitee, particularly in self-service retail establishments." They cite to Sheehan v. Roche Brothers Supermarkets, Inc., 863 N.E.2d 1276 (Mass. 2007), where the Supreme Judicial Court of Massachusetts explained the theory:

> "Courts adopting this approach have concluded that where an owner's chosen mode of operation makes it reasonably foreseeable that a dangerous condition will occur, a store owner could be held liable for injuries to an invitee if the plaintiff proves that the store owner failed to take all reasonable precautions necessary to protect invitees from these foreseeable dangerous conditions." Id. at 1283.

and foreseen conditions on its premises." A trial was held from February 24 through February 26, 2015.

Deborah testified first. She stated that, on March 23, 2009, between 2:00 p.m. and 3:30 p.m., she entered Roch's Market, a grocery store she frequented, to purchase meat. After leaving the meat department, Deborah turned a corner, took a few steps, and slipped on what she later discovered was "cucumber and oil and debris" from the nearby salad bar. When asked whether she saw a warning sign near the salad bar, Deborah responded, "No." She testified that she yelled for help to an employee "a few feet" away from her, but was not acknowledged because that person was assisting another customer. When asked whether there were any other employees in the area, Deborah replied, "No, other than people behind, like, the meat counter and the deli counter." Deborah said that she then crawled to the prepared foods department and used a rail to lift herself up. She eventually got the aforementioned employee's attention and told her that she fell and needed help. Deborah said that the employee offered assistance and wiped the floor. She testified that the manager of the meat department came over and spoke with her. Deborah said that he told her that there was no one available, at that time, to complete an incident report.

Deborah said that she experienced pain "[i]mmediately after the fall" because she landed in a contorted position. She testified that she had discomfort in her lower back, right upper back, right arm, right side, knee, ankle, and foot. The next morning, after a poor night's sleep, Deborah went to the emergency room. There, x-rays were taken that revealed no fractures. Deborah testified that she was told she had soft-tissue injuries. MRIs taken later, however, revealed that she had bulging and degenerative disks and multiple tears in her meniscus.

Deborah noted that she was collecting disability benefits from the state for fibromyalgia, anxiety, depression, and circulatory issues. She distinguished the pain from her fall from the fibromyalgia pain, stating, "It's a constant pain or like an ache or a throb. It's different from fibromyalgia, that sharp twitchy electrical current pain." She testified that she had experienced the pain from her fall daily.

Her husband, Jackie, testified next. He described his wife's health before her fall as "good" and stated that they were able to do everything that they wanted to do. Jackie testified that, prior to Deborah's fall, he required her help because of his own health issues. Discussing the effect that Deborah's injuries had on their life, Jackie said, "[O]ur life's just done. We do nothing." He testified that, after his wife's fall, he called Roch's Market and spoke with the meat-department manager. He recounted the incident and told the manager that Deborah was taken to the emergency room. Jackie testified that he wanted to fill out an incident report; however, the manager whom he spoke with told him to call an attorney.

Next, Ting Chan, the owner of Roch's Market, testified.[3] She said that she purchased the market in January 2008. Chan testified that she was not at the store on the day of Deborah's fall, however, the "general manager," Carl R. Masiello, told her that a customer fell. She noted that, at that time, they did not have the customer's name or any other information about her. She said that Deborah had not filed an incident report. She testified that Masiello, whom she described as a reliable and credible employee, never told her whether the customer was injured and also did not mention Jackie's phone call. When asked about Jackie's testimony that a Roch's Market manager told him to call an attorney, Chan testified that "I don't think any of our employee[s] would say things like that. Any kind of call like this, it will be directed to the manager or to me

---

[3] Chan was first called by plaintiffs as an adverse witness and was subsequently called by defendant as its witness.

* * * ." Chan described Roch's Market's policy for accidents involving customers. She said that a manager would fill out an injury report based on the customer's responses, so that Roch's Market would have the customer's name, contact information, and a description of what happened.

Chan testified that there was no salad bar in Roch's Market when she purchased the store. It was installed in mid- to late 2008 and was continuously used in that capacity until the end of 2010 or the beginning of 2011. Chan said that, although the structure still remained, self-serve salad items were no longer available. Instead, it contained wrapped sandwiches. Chan testified that Roch's Market stopped selling salad at the salad bar because it was not sufficiently profitable. When asked whether Deborah's injury influenced this decision, Chan replied, "It just didn't generate enough business for us." Chan was also asked if any changes had been made to the area near the salad bar after Deborah's incident, to which she replied, "No." She testified that Roch's Market did not put mats around the salad bar area because that would be a hazard as customers could trip on them.

The testimony of Masiello was introduced.[4] He said that he was working the day of Deborah's incident; however, he did not speak with her himself. Masiello testified that he verbally reported the incident to his superior. He said that he knew that Deborah sustained injuries from her fall, but he did not know the nature of her injuries. He also confirmed that there was "something on the floor."

Masiello was asked whether spills occurred often at the salad bar, to which he replied, "Not to my knowledge, no, I wouldn't say so." He did state, however, that he occasionally saw spills at the salad bar. When questioned about the policies of Roch's Market concerning the

_____

[4] Because Masiello was unavailable to testify, plaintiffs' attorney read the transcript of his December 17, 2014, deposition into the record.

salad bar, Masiello stated that there was not a particular employee assigned to monitor customers at that site. He noted, however, that the deli employees could view it from their station to see if it needed tending to, and a chef at Roch's Market periodically checked the salad bar to ensure that it was full. When asked whether there were mats or other protective materials near the salad bar to absorb possible spills, Masiello replied in the negative. He was also asked whether there were any warnings cautioning customers to be careful of spills and to notify a Roch's Market employee in case of a spill, to which he again replied in the negative.

Both parties then rested, and defendant moved under Rule 50 of the Superior Court Rules of Civil Procedure for a judgment as a matter of law. The defendant argued that, although it was undisputed that Deborah fell on oil and cucumber, "[t]here's no evidence there was actual notice to the store or anybody employed by the store * * * concerning the presence of something on the floor." The defendant also asserted that there was no evidence to support the conclusion that a Roch's Market employee had constructive notice of the spill, giving defendant a reasonable opportunity to clean it up before Deborah fell.

The plaintiffs also moved for a judgment as a matter of law. On the issue of notice, they argued that the "salad bar is equivalent to a leaky drainpipe where * * * it's a constant danger." They noted that Roch's Market lacked policies with respect to maintaining safety near the salad bar, and argued that "[t]he defect is already in existence in the nature of the product and the business in which they're selling it." They further contended that "even without mode of operation, without breach of contract, without any of those theories[,] * * * [t]here is still under the normal traditional concepts of negligence, due care obligation and causation, enough there to find for the [p]laintiff as a matter of law." After hearing each party on their respective motions,

the trial justice denied plaintiffs' motion for a judgment as a matter of law and reserved deciding defendant's motion.[5]

The trial justice then instructed the jury on the law. On the issue of duty, the trial justice said, "[d]efendant owed a duty to * * * [p]laintiff to exercise reasonable care to keep and maintain [its] premises in a reasonably safe condition for * * * food and grocery shopping * * * taking into account the nature of the operations and activities being conducted on * * * [d]efendant's premises at the time." After completing his instructions, the trial justice invited the parties' counsel to approach at sidebar, and plaintiffs' attorney requested instructions on the collateral-source rule, subsequent remedial measures pursuant to Rule 407 of the Rhode Island Rules of Evidence, and aggravation of pre-existing injuries. In response to these requests, the trial justice said that he did not think that those issues were raised in plaintiffs' papers. The trial justice stated that counsel did not provide him with written jury instructions and said, "[i]t may have made it to the clerk, but not to me." The plaintiffs' attorney, however, maintained that he did provide them, stating, "I have in my jury instructions, you know, the count of mode of operation and breach of contract and as part of my complaint."[6]

With respect to an instruction on the collateral-source rule, the trial justice determined that he did not "see any reason for it given the exhibit that's in the record. I don't see any

---

[5] Although before us plaintiffs broadly asserted that, "The [t]rial [j]ustice committed reversible error in failing to grant [p]laintiff's * * * [r]equest for directed verdict as to negligence * * *," they failed to develop an argument. "Generally, we will consider an issue to be waived when a party '[s]imply stat[es] an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues * * * .'" Bucci v. Hurd Buick Pontiac GMC Truck, LLC, 85 A.3d 1160, 1170 (R.I. 2014) (quoting State v. Chase, 9 A.3d 1248, 1256 (R.I. 2010)). Accordingly, we will not address this issue on appeal.

[6] We note that the above-referenced document does not appear within the lower court's file. Although plaintiffs provided this Court with a document entitled "Jury Instructions," there is no indication that the Superior Court had this document, as it is not time-stamped as received by that court, or signed by plaintiffs' counsel.

mention of insurance or other mention of insurance. I don't even want to raise the likelihood of the jury thinking about something they shouldn't be thinking about." Additionally, the trial justice determined that the evidence did not warrant an instruction on subsequent remedial measures. The trial justice did, however, instruct the jury on the issue of aggravation, stating, "The defendant in a personal injury case takes his plaintiff as he finds the plaintiff, and cannot defend based on the fact that the accident merely aggravated a pre-existing condition." The trial justice then asked the parties' counsel if they wanted to discuss anything else regarding the jury instructions, to which plaintiffs' attorney responded, "No, your Honor."

The jury then deliberated; and, on February 26, 2015, it found that plaintiffs had not proved "by a fair preponderance of the evidence that [d]efendant was negligent and said negligence was the proximate cause of any injury sustained by [p]laintiff[.]"

On March 1, 2015, plaintiffs moved for a new trial and additur, pursuant to Rule 59. A hearing on the motion was held on April 2, 2015. On the issue of notice, plaintiffs argued that "notice is implied if there were employees in the area that recognize[d] the defect and [had] an opportunity to address it." They argued that Deborah's fall was foreseeable because the products that Roch's Market sold at its salad bar had the potential to spill onto the floor. The plaintiffs contended that Roch's Market's removal of salad items from the salad bar was a subsequent remedial measure. Additionally, plaintiffs addressed a point that they vigorously focused on during trial: that defendant lacked notice after Deborah's incident. They argued that, "[T]here was a lot of suggestion by [Chan], * * * that she didn't know about the incident in question. * * * But it was clear that her own manager/supervisor [Masiello] indicated right from the onset that they were aware of it."

- 8 -

The defendant objected to plaintiffs' motion and argued that there was no evidence from which the jury could find that Roch's Market had reasonable notice of the spillage and an opportunity to correct it. The defendant discussed the theory of mode of operation, noting that it was not the law in Rhode Island, and that the jury rendered a verdict consistent with Rhode Island law.

In deciding plaintiffs' motion for a new trial, the trial justice first summarized the evidence adduced at trial. He addressed the issue of whether defendant was aware of Deborah's fall after it occurred, and he concluded that this issue was a "red herring" because the relevant notice inquiry is whether defendant had notice of the condition that caused Deborah to slip and fall, not defendant's after-the-fact notice of the fall. He also noted the numerous health issues that Deborah suffered from prior to her fall and stated that he—and presumably the jurors—had difficulty distinguishing Deborah's pre-existing ailments from those caused by the fall.

The trial justice noted that, in instructing the jury, he "made some revisions to the general instructions that [he] felt were necessary to tailor the instructions on general duties to the facts of this particular case * * * ." In doing so, the trial justice "focused the jury's attention to the fact that in considering this reasonable care, you take into account that there was a salad bar here, a self-service salad bar." The trial justice agreed with the jury's conclusion because plaintiffs' "presentation was unpersuasive, not only to the issue of negligence, but also with respect to her attempt to establish that her complaints and medical treatment were proximately caused by the accident." Accordingly, the trial justice denied plaintiffs' motion for a new trial.

On April 13, 2015, plaintiffs appealed.[7]  They argue that the trial justice erred by denying plaintiffs' motion for a new trial and failing to charge the jury on the mode of operation theory. Further, plaintiffs ask this Court to adopt that theory "as the standard in which slip and fall cases are analyzed in Rhode Island * * * ."

## II

### Standards of Review

As plaintiffs raise multiple issues on appeal, our standard of review differs with respect to each issue.  "With regard to the motion for a new trial, it is well settled that our review of a trial justice's decision is deferential."  Pawtucket Redevelopment Agency v. Brown, 106 A.3d 893, 899 (R.I. 2014) (quoting Martin v. Lawrence, 79 A.3d 1275, 1283 (R.I. 2013)).  "A trial justice's role in considering a motion for a new trial is that of a superjuror, who must weigh the evidence and assess the credibility of the witnesses."  Gomes v. Rosario, 79 A.3d 1262, 1265 (R.I. 2013) (quoting McGarry v. Pielech, 47 A.3d 271, 280 (R.I. 2012)).  "After undertaking this independent analysis, the trial justice must uphold the jury verdict if he or she 'determines that the evidence is evenly balanced or is such that reasonable minds in considering the same evidence could come to different conclusions * * *.'"  Free & Clear Co. v. Narragansett Bay Commission, 131 A.3d 1102, 1109 (R.I. 2016) (quoting Yi Gu v. Rhode Island Public Transit Authority, 38 A.3d 1093, 1099 (R.I. 2012)).  "This Court will not upset that determination unless the moving party demonstrates that 'the trial justice overlooked or misconceived material and relevant evidence or was otherwise clearly wrong.'"  Id. (quoting Yi Gu, 38 A.3d at 1099).

---

[7] The order denying plaintiffs' motion for a new trial was entered on April 16, 2015.  "Although [the plaintiffs] filed [their] notice of appeal before a judgment was entered, we routinely have treated such an appeal as timely filed."  Muschiano v. Travers, 973 A.2d 515, 520 n.6 (R.I. 2009).

- 10 -

"[T]his Court reviews jury instructions in a de novo manner." Ferris Avenue Realty, LLC v. Huhtamaki, Inc., 110 A.3d 267, 284 (R.I. 2015). We examine "jury instructions 'in their entirety to ascertain the manner in which a jury of ordinarily intelligent lay people would have understood them.'" Free & Clear Co., 131 A.3d at 1109 (quoting Riley v. Stone, 900 A.2d 1087, 1092 (R.I. 2006)). "[E]ven if an instruction is erroneous, reversal is warranted only if it can be shown that the jury could have been misled to the resultant prejudice of the complaining party." King v. Huntress, Inc., 94 A.3d 467, 482 (R.I. 2014) (quoting Botelho v. Caster's, Inc., 970 A.2d 541, 545 (R.I. 2009)).

## III

## Discussion

## A

## Motion for a New Trial

On appeal, plaintiffs maintain that the trial justice erred in denying their motion for a new trial. In support of this assertion, plaintiffs discuss and dispute various findings that the trial justice made in deciding the motion. Specifically, they assert that the trial justice ignored the fact that defendant repeatedly denied having knowledge of Deborah's fall. The plaintiffs also fault the trial justice for his "contradiction" because he summarized Deborah's testimony about the fall, yet found that she never explained the details of the fall. Additionally, they dispute the trial justice's finding about Deborah's injuries, stating, "The [t]rial [j]ustice attempted to make light of * * * [p]laintiff's damages indicating that her testimony did not reflect injuries related to the incident."

We are satisfied that the trial justice properly conducted the new-trial analysis. He summarized the evidence adduced at trial and concluded that he would not have reached a

different result from that reached by the jury. The trial justice found plaintiffs' case "unpersuasive" and noted its deficiencies, specifically with respect to negligence and causation. On the issue of Deborah's fall, the trial justice found that "the evidence was scant in terms of details" as "[s]he didn't say how she fell, whether she fell backwards, forwards, sideways." With respect to the issue of notice, the trial justice concluded that there was no evidence about how long the spillage was on the floor. He also addressed defendant's notice of Deborah's fall after it occurred and concluded that the pertinent question of notice was "what notice [defendants] had of the defect, or, if you want to call it, the condition that caused the fall, not what they knew afterwards." Lastly, on the causation issue, the trial justice found it difficult to distinguish between Deborah's pre-existing health problems and those caused by the fall, and he concluded that the evidence concerning her health was "murky at best."

As the record reveals, there is nothing to indicate that "the trial justice overlooked or misconceived material and relevant evidence or was otherwise clearly wrong" and therefore, we will not disturb his decision. Free & Clear Co., 131 A.3d at 1109 (quoting Yi Gu, 38 A.3d at 1099).

**B**

**Jury Instructions**

Additionally, plaintiffs argue that the trial justice erred in declining to instruct the jury on the theory of mode of operation. They contend that, prior to trial commencing, the trial justice told both parties that he would instruct the jury on said theory. The plaintiffs also maintain that a review of the record reveals "an extensive memorandum prior to the trial on mode of operation by way of its [m]otion in [l]imine."

Under Rule 51(b) of the Superior Court Rules of Civil Procedure, "No party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the party's objection." Rule 51(b) "bars a party from challenging an erroneous instruction unless [the party] lodges an objection to the charge which is specific enough to alert the trial justice as to the nature of [the trial justice's] alleged error." Ferris Avenue Realty, LLC, 110 A.3d at 285 (quoting Botelho, 970 A.2d at 548). Further, this Court's long-standing raise-or-waive rule "precludes us from considering issues at the appellate level that were not properly presented before the trial court." Botelho, 970 A.2d at 547. "[W]e are especially rigorous in the application of the raise-or-waive rule when considering objections to jury instructions." Id. at 548.

Here, plaintiffs' attorney neither requested an instruction on mode of operation nor objected when the trial justice did not instruct the jury on it. During the sidebar discussion concerning jury instructions, plaintiffs' attorney clearly requested instructions on the collateral-source rule, subsequent remedial measures, and aggravation of pre-existing injuries. Although counsel tangentially mentioned the mode of operation theory in passing, he did not request a specific instruction on it. He merely stated, "I have in my jury instructions, you know, the count of mode of operation and breach of contract and as part of my complaint." Further, when given an additional opportunity to raise any requests or concerns with respect to the jury instructions, the attorney responded, "No, your Honor." Thus, we deem this issue waived.

Finally, we reject the plaintiffs' alternative request for this Court to adopt the theory of mode of operation. Having concluded that the plaintiffs waived their request for a jury instruction on the theory, their plea to this Court to adopt it is akin to a request to exercise our

supervisory powers. "[I]t is well-established that this Court under its general supervisory powers can exercise its inherent power to fashion an appropriate remedy to serve the ends of justice." Clarke v. Morsilli, 723 A.2d 785, 786 (R.I. 1998)(mem.). However, "where '[c]reation of a new rule * * * will affect a large number of cases,' such creation of a new rule 'may require input from many sources.'" State v. Barros, 24 A.3d 1158, 1166 (R.I. 2011) (quoting State v. Feng, 421 A.2d 1258, 1273 (R.I. 1980)). As the plaintiffs did not properly request a jury instruction on the theory of mode of operation or object to the absence of such an instruction, this Court is without the benefit of the lower court's analysis and decision-making on the matter. Because "[t]he exercise of our supervisory jurisdiction is an extraordinary measure," this Court will not "consider the merits of adopting such a rule in light of the circumstances presented in this case." Feng, 421 A.2d at 1273.

**IV**

**Conclusion**

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be returned to that tribunal.

**SUPREME COURT – CLERK'S OFFICE**

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | Deborah Bates-Bridgmon et al. v. Heong's Market, Inc. d/b/a Roch's Market et al. |
| **Case Number** | SU-15-0214-Appeal. (KC 12-23) |
| **Date Opinion Filed** | January 24, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Gilbert V. Indeglia |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Bennett R. Gallo |
| **Attorney(s) on Appeal** | For Plaintiffs: Ronald J. Resmini, Esq. Adam J. Resmini, Esq. |
| | For Defendants: Dennis J. Roberts, II, Esquire |