**Supreme Court**

No. 2018-263-C.A.

(K1/83-12A)

State                                    :

v.                                       :

Stephen Mattatall.                       :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at (401) 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

| State | : |
| --- | --- |
| v. | : |
| Stephen Mattatall. | : |

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.** This case came before the Supreme Court on October 2, 2019, on appeal by the defendant, Stephen Mattatall (defendant or Mattatall), from the denial of his motion to reduce or correct an illegal sentence.[1] Before this Court, the defendant argues that the trial justice erred in denying his motion to correct an illegal sentence pursuant to Rule 35(a) of the Superior Court Rules of Criminal Procedure. The defendant argues that his sentence is illegal and must be vacated because the judgment of conviction did not conform to the oral sentence and because the sentence imposed was an unauthorized form of punishment. For the reasons set forth herein, we affirm the judgment of the Superior Court.

---

[1] Before this Court, defendant appeals from a judgment entered in the Superior Court, where he had filed an application for postconviction relief and a motion to correct an illegal sentence pursuant to Rule 35(a) of the Superior Court Rules of Criminal Procedure. Although the judgment entered on July 26, 2018 explicitly addresses the denial of the application for postconviction relief, it does not address the Rule 35 motion which is the issue before the Court in this case. Therefore, upon return of the papers to the Superior Court, we direct the entry of a corrected judgment to reflect the denial of the motion to correct sentence, in accordance with Rule 36 of the Superior Court Rules of Criminal Procedure.

**Facts and Travel**

The defendant is no stranger to this Court or the Superior Court. On the morning of September 24, 1982, John Scanlon was found dead in defendant's home. On January 7, 1983, defendant was indicted and held without bail on murder and weapons charges. The defendant subsequently was found guilty of second-degree murder after the first of three trials, and was sentenced to a term of forty years' imprisonment, with thirty years to serve, and ten years suspended, with probation. The trial justice also imposed an additional ten years to serve, because defendant was deemed to be a habitual criminal offender.

The defendant appealed his conviction to this Court, and we vacated the judgment and remanded the case for a new trial. *State v. Mattatall*, 510 A.2d 947, 953 (R.I. 1986). The state petitioned for certiorari to the United States Supreme Court, and the Supreme Court subsequently directed this Court to reconsider our decision in light of its opinion in *Kuhlmann v. Wilson*, 477 U.S. 436 (1986).[2] *Rhode Island v. Mattatall*, 479 U.S. 879, 879 (1986) (mem.). Upon reconsideration, we re-affirmed our initial holding, again vacated the conviction, and remanded the case for a new trial. *State v. Mattatall*, 525 A.2d 49, 53 (R.I. 1987).[3]

---

[2] In *Kuhlmann v. Wilson*, 477 U.S. 436 (1986), a state prisoner sought habeas corpus; one issue decided by the Supreme Court was "whether the Sixth Amendment forbids admission in evidence of an accused's statements to a jailhouse informant who was 'placed in close proximity but made no effort to stimulate conversations about the crimes charged.'" *Kuhlmann*, 477 U.S. at 456 (brackets omitted) (quoting *United States v. Henry*, 447 U.S. 264, 271 n.9 (1980)). After reviewing a line of its previous cases, the Court held that, when an accused's statements are obtained in this manner, the Sixth Amendment does not prohibit their admission into evidence. *Id.* The Court held that, in order to show a violation of an accused's Sixth Amendment right in this circumstance, "the defendant must demonstrate that the police and their informant took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks." *Id.* at 459. *Kuhlmann* remains good law today.

[3] Upon reconsideration after remand by the Supreme Court, this Court held that *Kuhlmann*'s analysis, "when applied to the facts of the case at bar, leads us to the conclusion that the role of the informant * * * was not one of mere passive listener and therefore would be controlled by the

The defendant's second trial began in September 1987. However, he was twice held in contempt of court because of persistent misconduct in the courtroom, and a mistrial was declared. The defendant's new (and last) trial was held in 1988, and he was found guilty again of second-degree murder. He was sentenced to sixty years' imprisonment, with fifty years to serve and ten years suspended, with probation. The defendant also received an additional sentence of twenty years to serve as a habitual offender, which, importantly and as expected, was ordered to be served consecutively to the sentence for second-degree murder. The habitual offender sentence was to be nonparolable for the first eighteen years of the sentence. This Court affirmed defendant's conviction in 1992. *State v. Mattatall*, 603 A.2d 1098, 1119 (R.I. 1992). The record before us establishes that the judgment of conviction for the crime of murder, which was designated in the judgment as "count 1," was incorrect because the sentence was ordered to be served consecutively to the sentence imposed as a habitual offender.

Although defendant has challenged his conviction and imprisonment regularly, appearing before the Superior Court and this Court on numerous occasions since 1992, the erroneous judgment of conviction was not discovered until almost three decades after it was entered.[4] Significantly, Mattatall's first appearance before the parole board was originally scheduled in 2001—after he served precisely eighteen years' imprisonment, but the hearing actually occurred in 2002.[5] In 2002, parole was denied for multiple reasons, including defendant's disciplinary record at the Adult Correctional Institutions. He also appeared before the parole board on four

doctrine * * * applied by us in our initial opinion." *State v. Mattatall*, 525 A.2d 49, 52-53 (R.I. 1987).

[4] The defendant had filed four petitions for postconviction relief prior to the filing of the motion to correct in the case on appeal, as well as other requests for relief filed since and currently pending before both the Superior Court and this Court.

[5] The defendant asserts that he postponed his first parole hearing because he wanted to achieve six months of booking-free conduct in prison.

more occasions, in 2007, 2010, 2012, and 2014. After each hearing, parole was denied for reasons other than defendant's behavior at the ACI, including the serious nature of the crime, his past criminal history, and the length of his sentence.

On July 13, 2015, defendant appeared before the parole board for the fifth time, and parole was granted. At that point, defendant had been incarcerated for more than thirty-two years. However, the minutes from that parole board hearing reflect uncertainty concerning whether defendant was eligible for release or whether he was to be paroled to begin serving the nonparolable eighteen-year habitual offender sentence. The parole board concluded that, if defendant's eligibility had not been calculated in the aggregate, then defendant would be paroled to his consecutive sentence as a habitual offender in August 2015. However, the parole board also decided that, if it was determined that his eligibility had been calculated in the aggregate and he therefore no longer had consecutive time to serve, then he would be paroled in January 2016 to a residential substance-abuse treatment program.

In October 2015, the parole board chairperson, by letter to defendant, informed him that the parole decision would be applied to the sentence for the murder conviction and that he was paroled to the consecutive nonparolable sentence as a habitual offender, a sentence over which the parole board did not have jurisdiction. Therefore, after serving thirty-two years of a fifty-year sentence for second-degree murder, defendant was paroled to the habitual offender sentence, and will serve a total of at least fifty years in prison.

In 2016, defendant filed a motion to correct an illegal sentence under Rule 35 of the Superior Court Rules of Criminal Procedure, as well as an application for postconviction relief. On July 25, 2018, a hearing was held in the Superior Court on the Rule 35 motion and the

application for postconviction relief. Both the application and the Rule 35 motion were denied.[6]

In the Superior Court, Mattatall conceded that the sentence imposed in 1988 was not an illegal sentence under Rule 35(a), but that the error arose from the manner in which the sentence was executed. The defendant contended that the oral pronouncement of the sentence reflected that the habitual offender sentence was ordered to be served consecutively to the sentence for the murder conviction. Thus, under the law in effect at the time, G.L. 1956 § 13-8-13, he was eligible to appear before the parole board in 1993, after ten years' imprisonment. But it was not until 2001 that he was first deemed eligible to appear before the parole board—after the precise length of the nonparolable sentence, which was eighteen years.

Unquestionably, in 1988, the trial justice sentenced defendant to sixty years at the ACI for second-degree murder, with fifty years to serve. He also sentenced defendant to a consecutive term of twenty years' imprisonment and ordered that eighteen years of that sentence was nonparolable. There is no dispute that the trial justice orally ordered that the habitual offender sentence be served consecutively to the sentence for the murder conviction. However, the written judgment for the murder conviction directs that the sentence is "to run consecutive to habitual offender sentence[,]" and the judgment for the habitual offender sentence mandates that sentence "[t]o run consecutive with count 1."

Although defendant conceded before the trial justice that the sentence was not an illegal sentence under Rule 35, he argued that its execution was illegal and constituted a violation of his due-process rights because it deprived him of his right to appear before the parole board for eighteen years, which was eight years longer than § 13-8-13 provided.[7] The defendant correctly

---

[6] The trial justice's denial of defendant's application for postconviction relief is not before the Court in this present appeal.

[7] Although defendant acknowledged before the trial justice that he was denied parole in 2002

- 5 -

argues that the judgment of conviction contains an error because it specifically recites that the sentence for murder shall "run consecutive to the habitual offender sentence."

The state argued that the trial justice did not have the authority to adjust defendant's parole eligibility because, even if the Department of Corrections improperly calculated his parole eligibility, this error did not render the sentence illegal for Rule 35 purposes.[8] The state also argued that there was no prejudice from defendant seeing the parole board after eighteen years rather than ten years, because the reasons for the board ultimately denying parole were not related to defendant's conduct at the ACI.

Despite the quandary created by the error in the judgment and the erroneous calculation of defendant's parole-eligibility date, the trial justice was careful not to "play Super Parole Board" in making his decision. He found that the sentence being served by defendant—as a habitual offender—was a nonparolable term that could not be altered unless the trial justice first found that it was an illegal sentence. Because, as the parties agreed, defendant's sentence was not an illegal sentence under Rule 35, the trial justice concluded that it was not subject to correction. However, the trial justice was "nonetheless troubled by the circumstances" presented by defendant's situation. The trial justice denied defendant's application for postconviction relief and his Rule 35 motion, ruling in favor of the state. Before this Court in this appeal, defendant argues that the trial justice erred in denying his Rule 35 motion.

partly because of his institutional record, he contends that he was prejudiced because, had he appeared before the parole board eight years earlier, he would have received the rehabilitative direction from the parole board that triggered his eventual turnaround in behavior which led to his eventual parole. According to defendant, it was his initial appearance before the parole board in 2002 that gave rise to the realization that he could one day be released on parole.

[8] The state also argued harmless error and asserted that the reasons for the denial of his parole after the initial 2002 appearance indicated that, had defendant seen the parole board eight years earlier, he might not have been released.

**Standard of Review**

This Court follows a "strong policy against interfering with a trial justice's discretion in sentencing matters." *State v. Barkmeyer*, 32 A.3d 950, 952 (R.I. 2011) (quoting *State v. Chase*, 9 A.3d 1248, 1254 (R.I. 2010)). Therefore, this Court's "review of a trial justice's decision on a Rule 35 motion is extremely limited." *Id.* (quoting *Chase*, 9 A.3d at 1254). "When faced with the interpretation of statutes and court rules upon review of a Rule 35 motion, however," this Court applies "a *de novo* standard." *State v. Bouffard*, 35 A.3d 909, 916 (R.I. 2012) (quoting *State v. Goncalves*, 941 A.2d 842, 847 (R.I. 2008)).

**Analysis**

On appeal, defendant argues that the trial justice erred in denying his motion to correct an illegal sentence. Because the judgment of conviction does not conform to the oral sentence, defendant contends, the sentence is illegal. With no citation to authority, defendant also contends that the judgment of conviction imposed an unauthorized form of punishment. We deem this incorrect. The defendant was sentenced to a term of imprisonment upon conviction for second-degree murder. Prison is where convicted murderers are sent; an unauthorized form of punishment for an offense such as this in this state would be the death penalty or a public flogging, for instance.

On the other hand, the state argues that the trial justice did not err in denying defendant's Rule 35 motion for several reasons, including that the motion was "procedurally infirm" because defendant was not seeking to correct an illegal sentence within the meaning of Rule 35(a). Instead, as defendant conceded before the trial justice, he was challenging the execution of his sentence, not its legality. Additionally, the state argues that any correction to the judgment would not alter Mattatall's current parole-eligibility date. According to the state, notwithstanding

- 7 -

the erroneous calculation of the date when Mattatall became eligible to apply for parole, he was eventually afforded the opportunity to appear. According to the state, Mattatall has failed to establish any prejudice from this delay. We decline to engage in this speculation, and we confine our analysis to the record.

We observe that, once defendant began the parole process, the reasons for which the parole board denied parole are in line with the board's standards for evaluating parole applications in accordance with § 13-8-14.1, and accurately mirror the statutory release criteria set forth in § 13-8-14, the first of which is a prisoner's institutional disciplinary record. The other factors include the seriousness of the offender's crime and whether release would "depreciate the seriousness of the prisoner's offense or promote disrespect for the law[.]" Section 13-8-14(a)(2). The reasons for denying Mattatall's parole application clearly relate to the murder conviction, for which release on parole was granted in 2016. At that point, Mattatall had been incarcerated for thirty-two years and faced another eighteen years without parole. The minutes of his last appearance before the board on July 13, 2015, indicate that the board was "uncertain if Mr. Mattatall's parole eligibility on his two sentences has been calculated in the aggregate." However, the board decided that, if Mattatall "no longer has consecutive time to serve, then the [b]oard votes to parole Mr. Mattatall in January 2016 to [a] residential substance abuse treatment program[.]" Thus, as of July 2015, the parole board was of the opinion that his release on parole was appropriate. However, Mattatall faced either another six months in prison or an additional eighteen years.

This Court's jurisprudence recognizes a difference between illegal sentences under Rule 35 and clerical mistakes in judgments under Rule 36. Relief under either rule is not available to this defendant. First, as he conceded in Superior Court, the trial justice did not

- 8 -

impose an illegal sentence. As the Reporter's Notes to Rule 35(a) provide, "an 'illegal sentence' is one which has been imposed after a valid conviction but is not authorized under law." This would include a sentence in excess of that provided by law or an unauthorized form of punishment, such as the death penalty. Unfortunately, the clerical mistake in the judgment of conviction was not discovered until defendant had served thirty-two years, and may have resulted in adverse consequences.

The trial justice was not without sympathy. He agreed that "somebody dropped the ball" and that Mattatall "was not seen by the [p]arole [b]oard when he lawfully was entitled to see the [p]arole [b]oard." The state did not disagree that Mattatall's parole eligibility was improperly calculated. However, the trial justice also recognized that defendant currently was serving a nonparolable term of imprisonment over which the parole board had no authority. He also correctly acknowledged that, in the context of this case, the law does not permit the court to alter the sentence without a finding that it was illegal. The trial justice pointed that out, and added: "But I am nonetheless troubled by the circumstances."

Neither the trial justice nor this Court can turn back time, nor can we speculate, one way or the other, on what the parole board would have done had Mattatall timely appeared before the board after he had served ten years of the sentence for second-degree murder. This unfortunate circumstance cannot be corrected. We deem it appropriate, however, to exercise our supervisory jurisdiction and afford defendant an opportunity to seek relief from the trial justice who has patiently presided over this case for three decades. We fully recognize that "the exercise of our supervisory jurisdiction is an extraordinary measure." *State v. Barros*, 24 A.3d 1158, 1166 (R.I. 2011) (brackets omitted) (quoting *State v. Feng*, 421 A.2d 1258, 1273 (R.I. 1980)). However, "this Court under its general supervisory powers can exercise its inherent power to

fashion an appropriate remedy to serve the ends of justice." *Bates-Bridgmon v. Heong's Market, Inc.*, 152 A.3d 1137, 1145 (R.I. 2017) (quoting *Clarke v. Morsilli*, 723 A.2d 785, 786 (R.I. 1998) (mem.)).  We hold that, based upon the dilemma wrought by the erroneous judgment in this case, the defendant may, within 120 days of the issuance of this opinion, file a motion to reduce the sentence imposed as a habitual criminal in accordance with Rule 35 and the general laws, or a motion to reduce the nonparolable portion of the sentence. *See State v. O'Rourke*, 463 A.2d 1328, 1331 (R.I. 1983) (noting that, in accordance with G.L. 1956 § 12-19-10, the Superior Court's authority to reduce a sentence under Rule 35 is limited to shortening the period of imprisonment while not suspending any portion of a sentence the offender has commenced serving).

We hasten to add that, although we deem this opportunity to seek a reduction in sentence fully warranted under the circumstances before us, we are careful to make clear that our decision applies to this case and this case only.

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court and remand this case to the Superior Court.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Stephen Mattatall. |
| **Case Number** | No. 2018-263-C.A.<br>(K1/83-12A) |
| **Date Opinion Filed** | November 22, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Robert D. Krause |
| **Attorney(s) on Appeal** | For State:<br><br>Lauren S. Zurier<br>Department of Attorney General |
| | For Defendant:<br><br>Camille A. McKenna<br>Office of the Public Defender |

SU-CMS-02A (revised June 2016)